**KRYSA, f.k.a. Sieber, Appellee,**

**v.**

**SIEBER, Appellant.**

[Cite as *Krysa v. Sieber* (1996), 113 Ohio App.3d 572.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69145.

Decided Aug. 19, 1996.

*Cameratta & Simon* and *Andrew J. Simon; Zashin, Rich & Satula* and *Robert I. Zashin,* for appellee.

*Joyce E. Barrett,* for appellant.

PATRICIA ANN BLACKMON, Judge.

Defendant-appellant Bradley Sieber appeals the trial court's granting Civ.R. 60(B)(1) relief from judgment to plaintiff-appellee Diane Sieber. He assigns the following five errors for our review:

"I. The trial court erred and abused its discretion in granting appellee's 60(B)(1) motion for relief from judgment and to withdraw acceptance of separation agreement.

"II. The trial court erred and abused its discretion in permitting into evidence at trial testimony and exhibits concerning negotiations and offers of compromise.

"III. The trial court erred and abused its discretion in permitting appellee's counsel, Andrew J. Simon, to testify at the hearing on the 60(B)(1) motion for relief from judgment and to withdraw acceptance of separation agreement.

"IV. The trial court erred and abused its discretion in denying appellant's Civil Rule 41(B)(2) motion to dismiss at the close of appellee's case.

"V. The trial court erred and abused its discretion in granting an ex parte post-decree restraining order upon appellant's assets."

After reviewing the record and the arguments of the parties, we affirm the judgment of the trial court. The apposite facts follow.

On April 20, 1993, Diane Sieber filed a complaint for divorce against her husband, Bradley Sieber. The trial of the action was set for December 5, 1994. The trial date was continued because of ongoing settlement negotiations between the parties. On December 13, 1994, the trial court advised the parties that the trial would begin that afternoon unless they reached a settlement. On the same day, the parties entered into a settlement agreement. The settlement agreement included a division of the parties' marital property and an agreement that Diane Sieber would receive $50,238 from the parties' joint money market account.

The trial court conducted a hearing on the separation agreement on December 13, 1994. Diane and Bradley Sieber both testified that they had read the agreement, they were advised by counsel at the time they signed the document, they understood the document, and they felt that the agreement was a fair resolution of their rights to a division of property and allocation of spousal support. They also answered affirmatively when asked if they understood that the agreement was a final property settlement that cannot be modified by the court at a later date.

The settlement agreement was journalized on December 13, 1994 along with an agreed judgment entry. On December 15, 1994, Diane Sieber filed a motion for relief from judgment, seeking to vacate the agreed judgment and to withdraw her acceptance of the separation agreement. Diane Sieber's motion included an affidavit from her trial counsel, Andrew Simon. Simon averred that he had miscalculated the total value of the marital assets because he inadvertently failed to include the value of Bradley Sieber's business and the value of Diane Sieber's pension. Simon further stated that, because of his error, he incorrectly calculated the amount of money Bradley Sieber should pay Diane Sieber in order to

further what he argued was the parties' agreement to equalize the division of marital assets. The trial court granted the motion for relief from judgment, finding that Diane Sieber's trial counsel "made a mathematical mistake which was inadvertent and excusable, and which was erroneously relied upon by Plaintiff and Plaintiff's counsel when they signed the typewritten separation agreement and judgment entry of divorce." The trial court vacated the judgment entry "except for those provisions granting the parties a divorce and restoring the Plaintiff to her former name, which provisions shall remain in full force and effect." Bradley Sieber appealed.

 The first issue for our review is whether the trial court erred by granting Diane Sieber's Civ.R. 60(B)(1) motion for relief from judgment and to withdraw her acceptance of the separation agreement. When reviewing the trial court's ruling on a Civ.R. 60(B) motion, we must apply an abuse-of-discretion standard. See *Rose Chevrolet, Inc. v. Adams* (1988), 36 Ohio St.3d 17, 20, 520 N.E.2d 564, 566. To prevail on a Civ.R. 60(B) motion, the moving party bears the burden to demonstrate (1) that he or she has a meritorious defense or claim to present if relief is granted, (2) that he or she is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5), and (3) that the motion was made within a reasonable time. *GTE Automatic Elec., Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113, syllabus.

The timeliness of Diane Sieber's motion is not in dispute. The record reveals the motion was filed just two days after the trial court's judgment entry. Consequently, the third prong of the *GTE* test is satisfied.

 We now turn our attention to the first and second prongs of the *GTE* test. Diane Sieber argues that her trial counsel's inadvertent error in calculating the value of the marital estate prevented the parties from achieving their mutually agreed goal of an equal division of their marital property. Although Bradley Sieber denied that equal property division was the parties' goal, both Diane Sieber and her trial counsel testified that the parties had agreed to divide their property equally.

The handwritten worksheet admitted as Exhibit 1 showed several instances of the parties totalling the assets and dividing the totals by two. In a hearing on the motion, the trial court found that an equal division of marital assets would not be inequitable under the circumstances of this case. The trial court also found that the parties' goal was to achieve an equal division of the property. Therefore, we conclude that the trial court was correct in finding the existence of a meritorious claim for an equal division of assets. Accordingly, the first prong of the *GTE* test has been satisfied.

■ In order to complete our inquiry, we must determine the second prong of the *GTE* test, which is whether Diane Sieber's motion for relief from judgment demonstrated one of the grounds for relief from judgment. Diane Sieber argues that she is entitled to relief under Civ.R. 60(B)(1) on the grounds of excusable neglect and inadvertence. We agree.

In *GTE,* the Ohio Supreme Court held that the neglect of a party's attorney will be imputed to the party for purposes of Civ.R. 60(B)(1). *Id.,* 47 Ohio St.2d at 153, 1 O.O.3d at 90, 351 N.E.2d at 117. However, the court did not hold that neglect of an attorney could never be excusable neglect. Though the *GTE* court denied the movant's request for relief from judgment, it did so only after finding that the movant's conduct was not excusable neglect because it evidenced "complete disregard for the judicial system and the rights of the [non-movant]." *Id.*

In this case, there is no evidence that the mathematical miscalculation was anything more than an inadvertent error. Simon testified that the goal of his calculation was to determine what payment Bradley Sieber would have to make to Diane Sieber in order to achieve an equal distribution of the marital assets. He began by taking the total value of the marital assets as reflected by Exhibit 1 ($311,792) and subtracting the $10,000 agreed adjustment on the value of Bradley Sieber's IRA and $8,500 for Diane Sieber's stocks, which the parties agreed should be sold and the proceeds divided equally. This gave Simon a total of $293,292 for the marital assets. He then divided that figure in half, reaching a result of $146,646. Next, he subtracted the value of the assets attributable to Diane Sieber ($46,408) which resulted in a figure of $100,238. He then subtracted the value of Diane Sieber's pension ($65,000) and arrived at a figure of $35,238. He then added back one-half of the value of Bradley Sieber's business ($15,000) and reached a final figure of $50,238. Simon stated that at the time he made the calculation, he believed that his calculation represented an equal division of assets. However, he later realized that he failed to include the value of Bradley Sieber's business or the value of Diane Sieber's pension when computing the total value of the marital assets and that the rest of his calculations were erroneous due to that initial error. There is nothing in Simon's conduct that suggests an intentional disregard for the judicial system or for Bradley Sieber's rights. The evidence suggests that the miscalculation was nothing more than an inadvertent error.

In *DeCurtins v. DeCurtins* (June 16, 1993), Miami App. Nos. 92 CA 2 and 92 CA 44, unreported, 1993 WL 211348, the court ruled that when the parties are attempting to achieve an equal division of marital assets, a mathematical error that results in an unequal division constitutes excusable neglect where the error

is "obvious from the record and the party adversely affected has promptly brought the error to the attention of the court." *DeCurtins* at 4.

The *DeCurtins* case illustrates that there is room under *GTE* for a finding of excusable neglect when a lawyer's mathematical error prevents the parties from achieving their mutually agreed goal of an equal division of assets. We conclude, therefore, that such a finding is proper in this case in light of the trial court's determination that an equal division of marital property is warranted based upon the facts.

■ This case in no way changes the law as to mutual mistakes and the sanctity of settlement agreements. We agree that properly executed settlement agreements should not be disturbed. However, where the trial court makes a finding that the parties are seeking an equal division of marital assets and a mathematical error interferes with that goal, a trial court does not abuse its discretion by granting relief from the settlement agreement and the accompanying judgment. Here, there is no evidence that the trial court reached beyond the boundaries of its authority and acted in a manner that can be described as unreasonable, arbitrary and unconscionable. See *Castlebrook Ltd. v. Dayton Properties* (1992), 78 Ohio App.3d 340, 346, 604 N.E.2d 808, 811. Consequently, Bradley Sieber's first assignment of error lacks merit.

■ In his second assignment of error, Bradley Sieber alleges that the trial court erred by allowing testimony and exhibits about negotiations and offers of compromise.

Evid.R. 408 provides that testimony about compromise and offers to compromise or of a completed compromise is not admissible to prove the liability for, or invalidity of, a claim or its amount when liability, invalidity or the amount is at issue. *Shimola v. Cleveland* (1992), 89 Ohio App.3d 505, 511, 625 N.E.2d 626, 629. However, such testimony may be admissible for other purposes. The rule specifically mentions such purposes as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution. According to the Staff Note to Evid.R. 408, "the enumerated list of other purposes is not exhaustive, being introduced with the phrase 'such as.'"

In this case, Bradley Sieber argues that the evidence was presented to show the existence of a mathematical error in Diane Sieber's trial counsel's calculations of the property division. In this divorce action, there was no issue of liability. The parties were in agreement as to the basis for the divorce and, at the time the separation agreement was signed, were in dispute only over the proper valuation of several items of marital property. Because the testimony about the settlement negotiations was not offered to prove liability or the validity of the claim, the trial

court did not err in admitting it. Bradley Sieber's second assignment of error is without merit.

In his third assignment of error, Bradley Sieber argues that the trial court erred by allowing Diane Sieber's trial counsel to testify at the motion hearing.

DR 5–102(A) provides:

"If after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4)."

DR 5–101(B)(3) provides:

"A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify * * * if the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client."

"DR 5–102(A) does not render an attorney incompetent to testify as a witness in a proceeding in which he is representing a litigant. When an attorney seeks to testify, his employment as counsel goes to the weight, not the competency, of his testimony." *Mentor Lagoons, Inc. v. Rubin* (1987), 31 Ohio St.3d 256, 31 OBR 459, 510 N.E.2d 379, syllabus. The admission of Simon's testimony was not erroneous. We overrule Bradley Sieber's third assignment of error.

Bradley Sieber's next argument is that the trial court erred by denying his Civ.R. 41(B)(2) motion to dismiss at the end of Diane Sieber's case. "Rule 41(B)(2), governing dismissal of plaintiff's claim at the conclusion of plaintiff's evidence in a non-jury action, is somewhat akin to a motion for a directed verdict in a jury action. The rule, however, is not governed by the standards which control the granting of a directed verdict." Staff Note to Civ.R. 41(B)(2).

When a case is tried without a jury, a motion for judgment at the conclusion of the plaintiff's case is one for dismissal under Civ.R. 41(B)(2). A dismissal of plaintiff's case under Civ.R. 41(B)(2) allows the trial court to weigh the evidence, resolve any conflicts therein, and render judgment for the defendant if the plaintiff has shown no right to relief. *Bank One, Dayton, N.A. v. Doughman* (1988), 59 Ohio App.3d 60, 571 N.E.2d 442.

In this case, Diane Sieber had to show that there was a material mistake in the property division calculations and that Bradley Sieber was aware of the mistake. As discussed above, Diane Sieber produced testimony by Andrew Simon that Bradley Sieber's attorney was aware of the parties' intention to divide the marital assets equally. This testimony, if believed, was sufficient to show that Diane Sieber had a right to relief from judgment. Accordingly, the trial court did not err in denying Bradley Sieber's Civ.R. 41(B)(2) motion for judgment.

Finally, Bradley Sieber argues that the trial court erred by granting an *ex parte* postdecree restraining order on Bradley Sieber's assets. In *Adornetti v. Adornetti* (May 7, 1992), Cuyahoga App. No. 62490, unreported, 1992 WL 95776, this court found that a motion for *ex parte* restraining orders, filed after the final decree of divorce was entered, was properly granted. In *Adornetti*, the former husband filed a postdecree motion to modify child support, then later filed a motion for *ex parte* restraining orders to prevent his ex-wife from making harassing phone calls to his mother. This court found that the filing of the motion to modify child support invoked the trial court's continuing jurisdiction under Civ.R. 75(I).

In this case, before filing her motion for *ex parte* restraining orders, Diane Sieber filed a Civ.R. 60(B)(1) motion for relief from judgment. Under the *Adornetti* analysis, the filing of the motion for relief from judgment invoked the continuing jurisdiction of the trial court. Bradley Sieber's fifth assignment of error is overruled.

*Judgment affirmed.*

SPELLACY, C.J., and NAHRA, J., concur.