[Cite as *Potter v. Potter*, 2013-Ohio-3531.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 99247**

---

## ROSANNE S. POTTER

PLAINTIFF-APPELLEE

vs.

## WILLIAM M. POTTER

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. D-296540

**BEFORE:** E.T. Gallagher, J., E.A. Gallagher, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** August 15, 2013

**ATTORNEYS FOR APPELLANT**

Anne C. Fantelli
Gregory J. Moore
Stafford & Stafford Co., L.P.A.
55 Erieview Plaza
5th Floor
Cleveland, OH 44114


**ATTORNEYS FOR APPELLEE**

Richard A. Rabb
Kaitlyn D. Arthurs
McCarthy, Lebit, Crystal & Liffman
101 West Prospect Avenue
Suite 1800
Cleveland, OH 44115

EILEEN T. GALLAGHER, J.:

{¶1} Defendant-appellant William M. Potter ("William") appeals the denial of post-decree motions to modify spousal support and for attorney fees. We find no merit to the appeal and affirm.

{¶2} William and plaintiff-appellee Rosanne S. Potter ("Rosanne") were divorced on September 4, 2007. The judgment entry of divorce ordered Rosanne to pay William spousal support in the amount of $3,000 per month for a period of 42 months from May 1, 2007 through November 1, 2010. The trial court reserved jurisdiction to modify the spousal support during the 42-month period pursuant to R.C. 3105.18, if a change in circumstances warranted a modification. As part of the divorce, the court also equally divided parties' marital assets, and William received over half a million dollars. Neither party was ordered to pay child support even though they had two minor children born as issue during the marriage.

{¶3} Prior to the divorce, Rosanne was employed by Lubrizol Corporation and earned $208,300 annually as a base salary. However, her 2007 tax return indicates that Rosanne earned a total of $471,879 that year as a result of Lubrizol's one time payment of deferred compensation at the end of her employment. At the time of the divorce, Rosanne was working part-time for RTI, International Metals, Inc. ("RTI") as a temporary employee under a contract with Resources Global Professionals and made $125,000 per year. RTI hired Rosanne as a full time employee on April 1, 2008, at a lower hourly rate. However, because she started working full time, her salaried income

increased to $145,000 per year plus bonuses. One month later, Rosanne accepted a position at Eaton Corporation with an annual salary of $147,500, plus bonuses. Rosanne's tax returns indicate that she earned $186,579 in 2008, $151,933 in 2009, and $132,952 in 2010.

{¶4} William has had diabetes mellitus and heart disease for several years. He had open heart surgery in 1995, bypass surgery in 1996, and suffered a heart attack in 2005. Although William attended a few years of college and graduated as a pastry chef from Culinary Institute of America in 1995, he was unemployed at the time of the divorce and had no income other than the spousal support he received from Rosanne. He admittedly has no commercial sales training, limited computer skills, and has not worked since 1998.

{¶5} Rosanne remarried after the divorce. At the time of the divorce Rosanne and the parties' minor children were living with Rosanne and present husband David Beveridge ("Beveridge"). Rosanne and Beveridge share equally in the household expenses, but individually pay expenses for their respective children. Rosanne has paid all of the children's expenses including daycare, medical expenses, and Catholic school tuition, without contribution from William.

{¶6} On April 8, 2009, William filed a motion to modify support and a motion for attorney fees. On September 14, 2009, Rosanne filed a motion to modify child support, motion to modify spousal support, and for attorney fees. Rosanne argued that William should pay child support since she has full-time custody of the children and pays all of

their expenses. She also argued that the amount of her spousal support obligation should be reduced to reflect a decrease in her income.

{¶7} William, on the other hand, argued that he was entitled to an increase in spousal support because while Rosanne's income has substantially increased and her expenses have decreased since the divorce, his medical expenses have increased. He asserted that he has no health insurance, no employment, minimal assets, and large medical bills. Therefore, he argued, there has been a significant change in circumstances justifying an upward modification of spousal support in both amount and term. He also claimed that Rosanne should pay his attorney fees.

{¶8} On March 21, 2012, a magistrate issued a decision denying all motions and William filed timely objections to the magistrate's decision. On January 7, 2013, the court issued a judgment entry overruling all of William's objections and adopting the magistrate's decision without modification. William now appeals and raises four assignments of error.

## Modification of Spousal Support

{¶9} In his first assignment of error, William argues the trial court abused its discretion by denying his motion to modify spousal support. In his second assignment of error, William argues the trial court abused its discretion by failing to comply with Civ.R. 53 when it adopted the magistrate's decision without modification. In the fourth assignment of error, William argues the magistrate's decision is against the manifest

weight of the evidence. We discuss these assigned errors together because they are interrelated.

{¶10} A magistrate's decision on the issue of modification is subject to a de novo review by the trial court. *Kapadia v. Kapadia*, 8th Dist. Cuyahoga No. 94456, 2011-Ohio-2255, ¶ 9, citing *Inman v. Inman,* 101 Ohio App.3d 115, 655 N.E.2d 199 (2d Dist. 1995). Under Civ.R. 53(D)(4)(d), a trial court "shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Thus, the trial court must conduct an independent analysis of the evidence to reach its own conclusions about the issues in the case.

{¶11} A trial court's ruling on objections to a magistrate's decision will not be reversed absent an abuse of discretion. *Gobel v. Rivers*, 8th Dist. Cuyahoga No. 94148, 2010-Ohio-4493, ¶ 16, citing *Remner v. Peshek*, 7th Dist. Mahoning No. 97CA98, 1999 Ohio App. LEXIS 4802 (Sept. 30, 1999). Furthermore, when reviewing the propriety of a trial court's determination in a domestic relations case, an appellate court generally applies an abuse of discretion standard. *Gray v. Gray*, 8th Dist. Cuyahoga No. 95532, 2011-Ohio-4091, ¶ 7, citing *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

{¶12} A trial court lacks jurisdiction to modify a prior order of spousal support unless the decree of the court expressly reserved jurisdiction to make the modification and unless the court finds (1) that a substantial change in circumstances has occurred and (2)

that the change was not contemplated at the time of the original decree. *Mandelbaum v. Mandelbaum*, 121 Ohio St.3d 433, 2009-Ohio-1222, 905 N.E.2d 172, paragraph two of the syllabus; R.C. 3105.18(F). If the court reserved jurisdiction for modification in the divorce decree, the trial court must consider the factors set forth in R.C. 3105.18(C)(1) to determine whether the existing support order should be modified in light of a significant change in circumstances. *Id.* at ¶ 31.

{¶13} Due to the strong interest in finality, the Ohio Supreme Court has cautioned that courts should only modify spousal support orders when one or both of the parties' circumstances have "drastically" changed. *Id.* at ¶ 16. The burden of establishing the need for a modification of spousal support rests with the party seeking the modification. *Tremaine v. Tremaine*, 111 Ohio App.3d 703, 676 N.E.2d 1249 (2d. Dist. 1996).

{¶14} In determining whether there was a substantial change in circumstances that would justify modification of child support, courts must consider the factors set forth in R.C. 3105.18(C)(1), which include: (1) the parties' income from all sources, including income derived from the property division made by the court; (2) the relative earning abilities of the parties; (3) their ages and physical, mental, and emotional conditions; (4) their retirement benefits; (5) the duration of the marriage; (6) their standard of living during the marriage; (7) the relative extent of education of the parties; (8) their relative assets and liabilities; (9) the contribution of each party to the education, training, or earning ability of the other party; (10) tax consequences of spousal support, and (11) the

lost income production capacity of either party that resulted from that party's marital responsibilities. R.C. 3105.18(C)(1).

{¶15} It is undisputed that the trial court reserved jurisdiction pursuant to R.C. 3105.18 to modify spousal support. In evaluating the factors set forth in R.C. 3105.18(C)(1), the trial court noted that William attended college for a few years but never obtained a degree. In 1995, during the parties' marriage, he attended the Culinary Institute of America and graduated as a pastry chef. He testified that he has been unable to work as a chef due to partial amputations of his feet secondary to his diabetes. However, he admitted that he had not sought or obtained additional education since the filing of the parties' divorce even though he expressed a need for computer training.

{¶16} There was no evidence that William sought any form of employment during the three years in which the parties' divorce was pending. William testified that he searched the internet and newspapers for job opportunities since the divorce and that he submitted approximately 20 job applications online or over the phone without success. However, he was unable to supply the name of any prospective employers from whom he sought employment, nor did he produce any documentation of his efforts to find employment. The magistrate found William's claim that he sought employment since the parties' divorce "was neither convincing nor credible." In his report, the magistrate further stated:

"What the Defendant claims to have done by way of a job search, if credible, would amount to no more than a token nod to the idea that he might expend the time and effort to find work."

{¶17} William's diabetes and heart disease were known to both parties long before their divorce in 2007. William admitted that his diabetes was "deemed significant" as early as 1997 or 1998. In 2002, William had a diabetes related infection in one of his toes that required him to receive intravenous antibiotics. In June of that year, he had a diabetes related procedure to the foot known as "surgical debridement." The infection left William incapacitated for a period of time while he received treatment for the infection and his diabetes. Based on this history, the trial court found that it was foreseeable at the time of the divorce that William would continue to have complications from his diabetes including foot infections.

{¶18} At the hearing on the post-decree motions, William introduced several letters from physicians describing his current medical conditions. However, none of the letters were authenticated or admissible under Evid.R. 702. Although inadmissible, the magistrate noted that a physician in one of the letters stated: " I advised him that he was physically capable of obtaining gainful employment. * * * Work that involved moderate activity for 8 hours a day would be perfectly permissible." William also submitted photographs of his feet that depict an ulcer and amputated toes. However, the magistrate stated that at the hearing William's feet "appeared less distressed than the feet photographed." Although William testified that he suffers from depression and that the

depression has prevented him from working, he presented no admissible expert evidence to support this conclusion.

{¶19} William testified that due to complications from his diabetes, he was often confined to home, connected to a wound-vac to draw away infection, and remained in need of daily nursing care. However, the magistrate found this testimony "in stark contradiction to the evidence of the Defendant's post-divorce spending and travels" throughout the United States.

{¶20} At the hearing, Rosanne produced evidence of William's bank records, which documented William's spending from 2007 through 2009. In 2007, William took several trips to: Puerto Rico; Chicago; Mammoth Cave, Kentucky; Harrisburg, Pennsylvania; Texas; Orlando, Florida; and New Mexico. The evidence showed that William spent thousands of dollars on transportation and lodgings. That same year, he purchased a $3,375 Bulgari watch, nearly $700 in gun-related purchases, over $7,500 from Sedlack Interiors, $2,884 from Arhaus Furniture, over $4,000 at Ticknors Men's Clothiers, and over $4,000 for expenses related to his Harley-Davidson motorcycle.

{¶21} In 2008, William traveled to Las Vegas, Nevada; New Hampshire; New Jersey; twice to Nashville, Tennessee; and again to Orlando, Florida. He again spent thousands of dollars on transportation and lodgings. In addition, William spent over $7,500 on purchases at Sheiban Jewelers, hundreds of dollars at Tiffany and Company, over a thousand dollars at Ticknors Men's Clothier, and hundreds of dollars on his Harley-Davidson motorcycle.

**{¶22}** In 2009, William continued to travel to Nashville, Tennessee and Sedona, Arizona. As in previous years, he spent thousands of dollars on men's clothing at Ticknors and Nordstrom, and nearly $4,000 at Best Buy. The records also reflect a $20,000 transfer to his adult son as a wedding gift. In addition to his travels, there was evidence that William participated in a bowling league in 2008 and 2009 despite his testimony that he was confined to his home connected to a wound vac.

**{¶23}** William's bank records also listed regular and substantial cash withdrawals that were unexplained. With the exception of William's list of prescription drugs and Rosanne's exhibits, William's expenses were undocumented.

**{¶24}** It is undisputed that William received substantial assets at the conclusion of the divorce proceedings. As part of the property division, William received over $500,000 in assets. Yet, William testified that those assets were nearly depleted by the time of the hearing. When questioned about what he did with certain assets, he responded that he did not know what happened to those funds. The magistrate found no evidence to show that William invested the assets he received from the divorce, or that he made any effort to improve his ability to earn a living and/or become gainfully employed.

**{¶25}** Despite her own health problems, including breast cancer, sciatica, and an overactive thyroid, Rosanne sought and obtained employment to further her career. Her base salary at the time of the hearing was little more than her salary at the time of the divorce, but her potential to earn bonus income had increased dramatically. She also received additional benefits, including health insurance, life insurance, disability

insurance, savings and pension plans, and paid vacation. She has remarried and shares living expenses with her new husband, who also earns a substantial income.

{¶26} The magistrate summarized the spousal support issue as follows:

The contrast between the Plaintiff and the Defendant is dramatic at almost every turn. * * * Like "The Grasshopper and the Ant" in Aesop, the parties have made for themselves the lives in which they now find themselves. Starting out from the divorce, each with appreciable assets, both in cash and investments, the parties have gone very different paths. Nothing in the credible and convincing evidence presented, shows that the Defendant did anything to save or improve his lot. The record as it exists is rife with examples of the Defendant's willingness and ability to spend away his income and assets, while doing nothing to plan for the proverbial "rainy day." Defendant knew he needed training in order to find employment, and, even when he was having no acute health difficulties, did nothing to address that need. Defendant, immediately following the divorce, had the time and financial wherewithal, if not the will, to obtain training that would improve his prospects for employment. Imprudently, he elected to travel around the country, and spend, relative to his regular income, extravagantly. He played. Knowing that he had chronic medical problems, which sensibly would dictate his having health insurance, the Defendant, though the parties' Divorce Decree contemplated him looking for employment that provided health insurance, failed to seek employment. While he spent money freely on clothes, jewelry, furniture and travel, he allowed his COBRA health insurance to lapse for non-payment. If the Defendant had genuine health related circumstances that prevented him from seeking work, the convincing and proper evidence to that effect should have been presented at trial. It was not. If the Defendant had so greatly depleted his post-divorce assets as to leave him with only $5,000.00 to meet his current expenses, the evidence of that depletion in paper or electronic records should have been available and presented at trial. It was not.

Plaintiff on the other hand is nothing if not a worker. She is clearly driven in her efforts to better her circumstances, to work and to save, and has a demonstrated record of success. She has taken the opportunity afforded to her after the divorce to better her employment, income and personal life. At the close of the within hearing, the Plaintiff was in a far better circumstance relative to income and assets than she was at the time of the parties' divorce. It is more than apparent that what she has achieved, she has worked for and earned.

> Where the Defendant has done nothing to help himself post-decree, he cannot in equity or in law now look to the Plaintiff and demand that she continue to fund his lifestyle.

**{¶27}** Although there was some evidence that the parties' circumstances have changed, none of the changes were significant or surprising. Rosanne had demonstrated during the parties' marriage that she is a hard worker and would likely continue to have a successful career. Although she has remarried and enjoys the luxury of sharing her living expenses with another person, a spouse's income cannot be considered in determining an obligor's ability to pay spousal support. *Manzella v. Manzella*, 2d Dist. Montgomery No. 20618, 2005-Ohio-4519, ¶ 12.

**{¶28}** Moreover, William's heart disease and diabetes were known to him before the divorce. William's loss of assets is the most significant change that occurred since the divorce and William is solely responsible for that. He chose to spend his money instead of investing it in education and training that would enable him to acquire stable employment and health insurance. "When considering the relative earning abilities of the parties in connection with an award of spousal support, Ohio courts do not restrict their inquiry to the amount of money actually earned, but may also hold a person accountable for the amount of money a 'person could have earned if he made the effort.'" *Rothman v. Burns*, 8th Dist. Cuyahoga No. 88756, 2007-Ohio-3914, ¶ 31, quoting *Beekman v. Beekman*, 10th Dist. Franklin No. 90AP-780, 1991 Ohio App. LEXIS 3917 (Aug. 15, 1991). The magistrate and the trial court refused to allow William to profit from his lack of effort to make his own living.

{¶29} Finally, William argues the magistrate abused his discretion by excluding evidence pertaining to his health conditions. He argues that he was competent to testify as to the treatment he received, surgeries he has undergone, and any other issue regarding his health. However, the magistrate did not exclude William's testimony about his conditions, he excluded unauthenticated letters from out-of-court medical experts pursuant to Evid.R. 702. Moreover, as previously explained, the parties were aware of William's diabetes and heart disease for several years and any deterioration in William's health was contemplated at the time of the divorce. Therefore, the court heard evidence regarding the complications from William's diabetes, but found that it did not warrant a modification of spousal support.

{¶30} Having reviewed the record, we find the manifest weight of the evidence supports the magistrate's decision to deny William's motion for modification of spousal support. We also find that the trial court reviewed the magistrate's decision and issued its own decision in accordance with Civ.R. 53(D)(4)(d). Therefore, we find no abuse of discretion and overrule William's first, second, and fourth assignments of error.

**Attorney Fees**

{¶31} In his third assignment of error, William argues the trial court abused its discretion by denying his motion for attorney fees.

**{¶32}** R.C. 3105.73(B) allows the court to award "reasonable" attorney fees to either party in any post-decree motion that arises from a divorce if the court finds that an attorney fee award is "equitable." When deciding whether to award attorney fees, the court may consider "the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets." *Mlakar v. Mlakar*, 8th Dist. Cuyahoga No. 98194, 2013-Ohio-100, ¶ 32. We review the trial court's decision whether to award attorney fees for an abuse of discretion. *Id.*, citing *Swanson v. Swanson*, 48 Ohio App.2d 85, 90, 355 N.E.2d 894 (8th Dist.1976).

**{¶33}** William asserts that the trial court should have awarded him reasonable attorney fees. In support of his argument, William cites several cases all of which affirmed an attorney fee award because the petitioning spouse incurred additional fees as a result of the other spouse's lack of cooperation during divorce or post-decree proceedings. However, he does not argue that Rosanne failed to cooperate or that he incurred additional attorney fees as a result of her conduct. Indeed, the evidence showed that not only did Rosanne make all of her spousal support payments in a timely manner, she assisted William in obtaining insurance through her employer after he allowed his health insurance through COBRA to lapse. We find no basis upon which the trial court could justify awarding William any attorney fees in this case.

**{¶34}** Therefore, the third assignment of error is overruled.

**{¶35}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the domestic relations court division to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

EILEEN A. GALLAGHER, P.J., and
TIM McCORMACK, J., CONCUR