[Cite as *Wojanowski v. Wojanowski*, 2014-Ohio-697.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99751**

# DEBORAH WOJANOWSKI

PLAINTIFF-APPELLEE

vs.

# PETER WOJANOWSKI

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. D-339379

**BEFORE:** McCormack, J., Boyle, A.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** February 27, 2014

**ATTORNEYS FOR APPELLANT**

Andrew J. Simon
James L. Simon
Freedom Square II, Suite 165
6000 Freedom Square Drive
Independence, OH 44131


**ATTORNEYS FOR APPELLEE**

Richard A. Rabb
Kaitlyn D. Arthurs
McCarthy, Lebit, Crystal & Liffman
101 West Prospect Avenue
Suite 1800
Cleveland, OH 44115

TIM McCORMACK, J.:

{¶1} Peter Wojanowski ("Husband" hereafter) appeals the domestic relations court's judgment entry of divorce. He claims the court abused its discretion in dividing the parties' property, awarding spousal support, and granting attorney fees. After a careful review of the record and applicable law, we affirm the trial court's judgment in part, reverse in part, and remand the matter for further proceedings consistent with the opinion.

## Procedural History

{¶2} The Wojanowskis were married in 1987. They have a daughter, who was born in 1992 and emancipated when she graduated from high school in June 2011. In February 2010, Deborah Wojanowski ("Wife" hereafter), age 52, filed for divorce from her husband, age 57. In November 2011, she dismissed the action but refiled it days later.

{¶3} Husband has been a financial broker since 1989. He was employed by AG Edwards, and then by Smith Barney, before joining his current employer, Merrill Lynch, in 2005. Wife had a degree in business administration but had not worked outside the home since 1992, when the couple moved from California to Cleveland. Her only employment since 1992 was selling Mary Kay cosmetic products for a brief period of time.

{¶4} Wife has an assortment of physical health problems. She suffered chronic pains in her ankles, knees, and back, and had undergone multiple operations to treat her back pain. She also suffered pains in her leg "associated with a diagnosis of MS," as noted by a neurologist. One doctor had told her that her blood work revealed lupus and

rheumatoid arthritis. In addition to these physical ailments, she also suffers from depression and anxiety. A letter from her doctor indicated that she was incapable of working. She made some efforts, however, to improve her job skills since she filed for divorce. Husband also has certain medical problems, but they did not seem to impact his ability to work.

{¶5} A five-day hearing was held by a magistrate over the divorce complaint. In a 36-page single-spaced decision, the magistrate divided the parties' property, awarded spousal support, and granted attorney fees sought by Wife. The trial court adopted the magistrate's decision without modifications.

{¶6} Husband now appeals, raising three assignments for our review. The three assignments of error concern (1) property division, (2) spousal support, and (3) attorney fees, respectively. We review these assignments with the recognition that, as a general rule, an appellate court reviews a trial court's determinations in a domestic relations case for an abuse of discretion. *Kehoe v. Kehoe*, 2012-Ohio-3357, 974 N.E.2d 1229 (8th Dist.).

## First Assignment of Error: Property Division

{¶7} Under the first assignment of error, Husband claims the trial court (1) made erroneous divisions of his potential future income based on his "book of business," (2) failed to divide the proceeds of a sale of the marital residence, (3) made mathematical errors in dividing the parties' bank accounts, (4) failed to valuate the parties' personal property before ordering each party to retain property in their respective possessions, (5) erred in awarding a life insurance policy to Wife, (6) erred in granting Wife half of

potential financial awards he could receive from Merrill Lynch, and (7) erred in granting two Merrill Lynch accounts to their daughter.

{¶8} In a divorce proceeding, the division of marital and separate property is governed by R.C. 3105.171. The statute directs a trial court to determine what constitutes marital property and separate property, and to "divide the marital and separate property equitably between the spouses." R.C. 3105.171(B).

{¶9} Trial courts are vested with broad discretion in determining the appropriate scope of property awards in a divorce action. *Berish v. Berish*, 69 Ohio St.2d 318, 319, 432 N.E.2d 183 (1982). Although its discretion is not unlimited, the trial court has authority to do what is equitable, and its judgment should not be reversed unless it has abused its discretion. *Cherry v. Cherry*, 66 Ohio St.2d 348, 421 N.E.2d 1293 (1981). An appellate court will not disturb the trial court's distribution of marital property absent an abuse of discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 541 N.E.2d 1028. It has long been established that broad discretion is vested in the trial court to determine an equitable property division, because "the different facts and circumstances which each divorce case presents to a trial court requires that a trial judge be given wide latitude in dividing property between the parties." *Koegel v. Koegel*, 69 Ohio St.2d 355, 357, 432 N.E.2d 355 (1982).

{¶10} In this case, Husband claims that the trial court made a multitude of errors in dividing the parties' property. In the following, we address each of the alleged errors in turn.

## 1. Marital Residence

**{¶11}** Husband argues the trial court erred in failing to divide the proceeds of the sale of the marital home. The marital home was appraised at $310,000 but subject to a mortgage of $194,227.39 as of August 1, 2012. The trial court, adopting the magistrate's decision, ordered the marital home to be sold and gave detailed instructions regarding how the home should be listed and how offers should be accepted. However, the trial court, like the magistrate, did not explicitly divide or distribute the proceeds, apparently inadvertently.

**{¶12}** Pursuant to R.C. 3105.171, the trial court has a duty to determine what constitutes marital property and what constitutes separate property, and, upon making such a determination, divide the marital and separate property equitably between the spouses. While determining the marital residence to be marital property and ordering its sale, the trial court here failed to divide the proceeds as required by the statute in its judgment entry.

**{¶13}** Wife claims Husband waived the error because he failed to challenge the magistrate's error in his objections to the magistrate's decision and therefore waived the error. Our review of the objections, however, reflects that Husband *did* challenge the magistrate's treatment of the marital residence, complaining that Wife failed to sell the house during the divorce proceedings to his detriment, and claiming the magistrate should have penalized her for her lack of efforts. Although Husband's objections did not specifically state the magistrate should have expressly divided the proceeds in the eventual sale of the home, we consider Husband's objections regarding the marital time sufficiently

preserved the error for appeal purposes. Upon remand, the trial court must follow the mandate of the statute and make an equitable division of this marital asset.

## 2. Catholic Credit Union and PNC Bank Accounts

{¶14} Apparently the court made some calculation errors in dividing the Ohio Catholic Credit Union account and the PNC money market account. Regarding the Ohio Catholic Credit Union account, the magistrate found a deposit of $90,134.98 into that account in October 2010 to be a payment from Merrill Lynch and a marital property. At the time of trial, only $66,831.34 remained. The magistrate equally divided the remaining amount of $66,831.34. Regarding the amount that had been expended prior to the trial, $23,303.64, the magistrate found Husband had withdrawn a portion of it, $9,765.93, to pay for the monthly mortgage, but had taken the remaining ($23,303.64 – $9,765.93 = $13,537.71) for non-marital purposes. (The magistrate made an arithmetic error and stated this amount was $13,259.44 when in fact it was $13,537.71.) The magistrate properly determined that Wife should be entitled to half of the amount taken by the Husband from this account for non-marital purposes, but went on to state, in error, that Wife is entitled to $13,259.44, which represents the *entire* amount. The trial court adopted the magistrate's erroneous calculations.

{¶15} Similarly, there was a calculation error in the magistrate's division of the PNC money market account. The magistrate found Husband had withdrawn $10,573 and Wife had withdrawn $2,000.78, respectively, from this account for non-marital purposes; by the end of the divorce proceedings, $50,512.37 remained on the account. The magistrate

awarded each party half of the remaining amount. However, in an attempt to equalize the parties' share of this account and to account for the funds previously withdrawn by the parties for non-marital purposes, the magistrate, in an apparent error, awarded the *entire* amount of $10,573 to Wife and the *entire* amount of $2,000.78 to Husband. Instead, the magistrate should have awarded half of $10,573 to Wife and half of $2,000.78 to Husband. Based on the magistrate's erroneous division, the trial court improperly awarded Wife $33,828.40 regarding this PNC account. Upon remand, the trial court should correct these calculation errors.

{¶16} On appeal, Wife claims this court has no authority to correct the errors because "mathematical" errors can only be corrected by the trial court upon a Civ.R. 60(A) motion. She cites *Westhoven v. Westhoven*, 6th Dist. Ottawa No. OT-10-037, 2011-Ohio-3610, and *Krysa v. Sieber*, 113 Ohio App.3d 572, 681 N.E.2d 949 (8th Dist.1996), for the proposition that such errors can only be corrected by the trial court upon a Civ.R. 60(A) motion.

{¶17} Neither case stands for the proposition. Civ.R. 60(A) itself states that "[c]lerical mistakes in judgments * * * and errors therein arising from oversight or omission *may* be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders." (Emphasis added.) The rule permits a correction of clerical errors by the trial court, but does not prohibit a reviewing court from correcting such errors. As the Sixth District itself explained in *Westhoven*, Civ.R. 60(A) *permits* a trial court to modify a judgment if it contains a clerical error but not

a substantive error. *Id.* at ¶ 12. *Krysa* involved not Civ.R. 60(A) but rather Civ.R. 60(B) ("Mistakes; Inadvertence; Excusable neglect; Newly discovered evidence; Fraud") and held that the trial court properly granted a Civ.R. 60(B)(1) motion filed by a party for relief from judgment on the grounds of excusable neglect. Neither case supports the claim that the calculation errors can only be corrected pursuant to a Civ.R. 60(A) motion.

### 3. Personal Property

{¶18} Regarding the trial court's division of personal property, Husband contends the trial court improperly ordered each party to retain personal property in their respective possessions without first conducting a valuation.

{¶19} Again, Wife claims Husband waived the claim on appeal because he did not object to the magistrate's decision ordering the parties to retain personal property in their possession. Our review of Husband's objections to the magistrate's decision, however, reflects that Husband clearly complained of the magistrate's distribution of personal property.

{¶20} With respect to the division of marital property, R.C. 3105.171 requires a trial court is to equitably divide and distribute the parties' marital property. "As a practical matter, for an appellate court to review a trial court's division of property, * * * findings of value must be made so that equality of value may be examined." *Eisler v. Eisler*, 24 Ohio App.3d 151, 152, 493 N.E.2d 975 (11th Dist.1985). Thus, "it is error for the trial court to fail to make a finding as to the fair market value of each item of marital property so that an appellate court can effectively review the propriety of the court's decision." *Id.* at

syllabus. *See also Taylor v. Taylor*, 8th Dist. Cuyahoga No. 86331, 2006-Ohio-1925, ¶ 35.

Upon remand, the trial court is to determine the value of the items of personal property in the parties' possession and make an equitable distribution of the properties.

## 4. MetLife Universal Policy

**{¶21}** Husband claims it was an error for the trial court to award a MetLife Universal policy owned by Wife without first establishing its value. The record contains little evidence before the court for the existence of this property other than a fax from MetLife showing a payment of $335 in annual payment in August 2010. Noting the dearth of evidence showing the nature of the MetLife policy, let alone its value, the magistrate determined it should remain the property of Wife. In any event, our review of Husband's objections to the magistrate's decisions does *not* reflect an objection by Husband regarding the disposition of this property; therefore, Husband has waived the claim pursuant to Civ.R. 53(D)(3)(b)(iv).

## 5. Merrill Lynch Awards

**{¶22}** Husband qualified for several Merrill Lynch awards. The trial court determined these awards to be marital property and awarded Wife one half of each of these awards, on the ground that the awards were earned during the marriage. Husband claims the trial court erred because these awards will only be vested years from now, provided he maintains employment with Merrill Lynch.

**{¶23}** There does not appear to be case law directly on point, but the case law concerning the distribution of unvested pension may provide some guidance. In *Pruitt v.*

*Pruitt*, 8th Dist. Cuyahoga No. 84335, 2005-Ohio-4424, ¶ 62, this court, addressing unvested pension and retirement benefits, noted that these benefits have value, whether vested or otherwise, and, if accumulated during a marriage, must be considered in the equitable division of marital assets. *Id.* at ¶ 62, citing *Haller v. Haller*, 12th Dist. Warren No. CA95-06-063, 1996 Ohio App. LEXIS 985 (Mar. 18, 1996). *See also Lemon v. Lemon*, 42 Ohio App.3d 142, 144, 537 N.E.2d 246 (4th Dist.1988) ("An unvested pension plan has value."). Thus, applying the principle that employment benefits do not have to be vested for purposes of dividing marital assets upon a divorce, we do not find the trial court's division of Husband's employment awards, which were earned during the marriage, to be an abuse of discretion.

### 6. Two Merrill Lynch Accounts Established for a Child

{¶24} The couple established two Merrill Lynch accounts for their child Heather — who reached the age of majority during the pendency of the divorce proceedings. In its judgment, the trial court ordered Husband to "transfer to Heather Wojanowski all of the funds on deposit in UTMA account No. 81L99013 and account No. 81L99715." On appeal, Husband claims the trial court erred in awarding the accounts to their child, arguing that both are marital assets and should be divided between the parties.

{¶25} Our review shows that the first of these two accounts (No. 81L99013) is a Uniform Transfers to Minors Act ("UTMA") account in the child's name: the account shows its owner as "Peter Wojanowski C/F Heather M Wojanowski UTMA/OH Until Age 21."

**{¶26}** R.C. 5814.03 provides that a gift or transfer to a minor child made pursuant to the Transfers to Minors Act is irrevocable and conveys to the minor indefeasibly vested legal title to the property. *See also Hyder v. Hyder*, 9th Dist. Wayne No. 06CA0014, 2006-Ohio-5285, ¶ 7-9; *LCP Holding Co. v. Taylor*, 158 Ohio App.3d 546, 2004-Ohio-5324, 817 N.E.2d 439, fn. 3 (11th Dist.). The court in *Hyder* held that UTMA accounts could not be characterized as marital assets because the parents had no property interest in them. *Id.* at ¶ 9.

**{¶27}** Here, the magistrate, citing *Hyder,* properly concluded that the UTMA account is not marital property. However, both the magistrate and the trial court ordered the funds of the account "transferred" to Heather. This appears to be unnecessary, because Heather is the owner of the account, and Husband, as the account's custodian, has no rights to the account, once she reached 21.

**{¶28}** Regarding the second account (No. 81L99715), our review of a Merrill Lynch account statement shows that this is an "Education Savings" account. The account owner is listed as "MLPF & S CUST FPO HEATHER WOJANOWSKI MLESA PETER WOJANOWSKI GDN." It is unclear what some of the abbreviations designate, and the record reflects no other information about this account, other than the fact that this account was established by the couple to pay for Heather's education.

**{¶29}** The magistrate stated that, although this account does not appear to have been established pursuant to the UTMA, there was no reason not to give effect to the original purpose for this account. The trial court, in its judgment entry, stated the funds in the

account should be transferred to Heather. On appeal, Husband claims this account should be divided as a marital asset.

{¶30} This account, referred to as an "Education Savings" account in the account statement, appears to be a "Coverdell Education Savings" account. As such, the ownership, beneficiary, and use of the funds of the account is subject to IRS regulations. The magistrate properly observed that the parties' original purpose should be given effect. It is unclear, however, whether the account could be "transferred" to Heather, as the trial court ordered in its judgment entry. Regardless, the trial court did not abuse its discretion in not dividing it between the couple as a marital asset.

### 7. Husband's Potential Future Income Based on his "Book of Business"

{¶31} The trial court awarded Wife half of Husband's future earnings as a financial advisor under various Merrill Lynch compensations programs for its financial advisors. All these potential future earnings relate to the unique way Husband is compensated as a financial advisor who has a "book of business." The "book of business" includes the number of clients and the amount of assets under management. The potential future earnings awarded by the trial court are all derived from Husband's "book of business," which the court found to have been developed during the marriage.

{¶32} One category of income based on the "book of business" is called a "forgivable loan." Merrill Lynch, like other major brokerage firms, awards newly hired financial advisors who bring to the firm a "book of business" with an up-front payment, structured as a "forgivable loan." The amount of the "forgivable loan" would be based on

the brokerage firm's projection of the new hire's potential earnings, calculated on that employee's "book of business" and his or her productivity over the previous year prior to joining the firm. The amount of "forgivable loan" is an indication of the value of a financial advisor's "book of business." When Husband joined Merrill Lynch as a financial advisor in 2005, he received an amount of $485,872 in a "forgivable loan."[1] This amount is not at issue before the trial court, as that amount had been deposited into the couple's bank accounts, which were divided as marital property.

{¶33} What *was* disputed is Wife's claim that the "book of business" is still a valuable asset and its value should be divided in the divorce. Her expert valued the "book of business" at $340,000, based on (1) the expert's assumption that Merrill Lynch would be required to pay Husband for his "book of business" if he migrates to another brokerage firm, and (2) on the amount of "forgivable loan" he previously received. The magistrate rejected the expert's valuation. The magistrate noted that Weinberg's valuation of Husband's "book of business" was premised on the expert's erroneous interpretation of Husband's employment contract that Merrill Lynch was required to pay him a sum of money for his "book of business" if he were to leave. The magistrate found the assumption purely speculative and flied in the face of the employment contract Husband signed in 2005, which made the "book of business" Merrill Lynch's property.

---

[1] The principle of the "loan," along with interest of 4.5 percent, was payable in 60 monthly installments of $8,507.50 (exhibit No. 26).

{¶34} Although the magistrate found the valuation of the "book of business" at $340,000 unsupported by evidence and refused to award Wife half of what she believed to be the value of the "book of business," the magistrate nonetheless found the "the book of business" to be a marital asset and awarded Wife half of any *potential* future earnings derivable from it.

{¶35} On appeal, Wife does not challenge the court's rejection of her claim that she is entitled to half of the value assigned by her expert to Husband's "book of business." Husband, however, challenges the court's award of half of his potential future earnings based on the "book of business."

{¶36} Specifically, the court awarded Wife half of the marital portion of any payments Husband may receive under Merrill Lynch's Client Transition program. Under the Client Transition program, a financial advisor who voluntarily leaves Merrill Lynch will have his or her "book of business" transferred to financial advisors in Merrill Lynch. The departing financial advisor will then receive a percentage of the commissions earned off the "book of business," in exchange for providing consulting services and maintaining client relationships after his or her departure. The magistrate explained that Husband spent the bulk of the marriage building up his client base and, therefore, it would be "grossly unfair" to allow Husband to keep all the potential future income he could receive based on his "book of business."

{¶37} The court also awarded half of any death benefit Merrill Lynch would pay under its Death Benefit program in the event Husband dies while employed. Under this

program, a financial advisor's estate will receive one year's commission attendant to the "book of business," based on the financial advisor's production level in the prior year, if the financial advisor dies while still employed with Merrill Lynch.

{¶38} Finally, the court awarded Wife half of the marital portion of any potential payment structured as a "forgivable loan," *if* Husband were to migrate to another brokerage firm and receive such an upfront payment from his new employer.

{¶39} We will not reverse a trial court's characterization of property as separate or marital absent an abuse of discretion. *Peck v. Peck*, 96 Ohio App.3d 731, 734, 645 N.E.2d 1300 (12th Dist.1994). Here, the "asset" in the form of the "book of business" was undisputedly amassed during the course of the parties' long marriage. The trial court considered it as marital property and divided the marital portion of any future income Husband may receive based on the "book of business" he developed during the marriage. As such, we do not find an abuse of discretion.

{¶40} The first assignment of error is sustained in part and overruled in part.

## Second Assignment of Error: Spousal Support

{¶41} Under the second assignment of error, Husband argues the trial court erred in awarding spousal support of $4,500 per month to Wife and in failing to delineate the circumstances upon which the spousal support may be modified.

{¶42} "After a divorce has been granted, the trial court is required to equitably divide and distribute the marital estate between the parties, and to consider whether an

award of alimony would be appropriate." *See Wolfe v. Wolfe*, 46 Ohio St.2d 399, 414, 350 N.E.2d 413 (1976).

**{¶43}** The trial court has broad discretion in determining whether an award of spousal support is proper based on the facts and circumstances of each case. *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990). We will not disturb a spousal support award absent an abuse of discretion. *Id.*

**{¶44}** When determining whether spousal support is appropriate and reasonable, the trial court must consider the factors set forth in R.C. 3105.18(C)(1). *Kaletta v. Kaletta*, 8th Dist. Cuyahoga No. 98821, 2013-Ohio-1667, ¶ 22. No single factor, by itself, is determinative. *Id.* at ¶ 22.

**{¶45}** The thirteen factors enumerated in R.C. 3105.18(C)(1) include: the parties' income from all sources, including income derived from the property division made by the court; the relative earning abilities of the parties; their ages and physical, mental, and emotional conditions; their retirement benefits; the duration of the marriage; their standard of living during the marriage; the relative extent of education of the parties; their relative assets and liabilities; the contribution of each party to the education, training, or earning ability of the other party; tax consequences of spousal support, and the lost income production capacity of either party that resulted from that party's marital responsibilities. R.C. 3105.18(C)(1).

**{¶46}** "The court need not expressly comment on each factor but must indicate the basis for an award of spousal support in sufficient detail to enable a reviewing court to

determine that the award is fair, equitable, and in accordance with the law." *Walpole v. Walpole*, 8th Dist. Cuyahoga No. 99231, 2013-Ohio-3529, citing *Kaletta*.

**{¶47}** Here, the trial court adopted the magistrate's award of $4,500 to Wife in monthly spousal support, but stated " [t]he Court shall retain jurisdiction to modify this order." The court also noted that pursuant to R.C. 3105.18(B), the payments shall terminate upon the death of either party or Wife's remarriage or cohabitation with a member of the opposite sex. Our review of the magistrate's decision, adopted by the trial court, reflects a lengthy analysis, which encompasses each of the enumerated statutory factors.

**{¶48}** The magistrate gave due consideration to the substantial duration of the marriage and emphasized Wife's lack of potential to become self-supporting in light of her age, her physical and mental health ailments, the years she spent as a homemaker, and her very limited employment history during the marriage. *See Kunkle*, 51 Ohio St.3d 64, 554 N.E.2d 83, paragraph one of the syllabus (a spousal award of indefinite duration may be appropriate in cases involving a marriage of long duration, parties of advanced age, or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, whereas the payee spouse has the resources, ability, and potential to be self-supporting).

**{¶49}** In calculating Husband's income for spousal support purposes, the magistrate noted that, because of the complicated way Husband's compensation is structured as a financial advisor, the most accurate measure of his income history was reflected in the

2008-2011 Compensation Summary prepared by Merrill Lynch. The report shows Husband's compensation was $126,521, $138,310, $122,215, $127,066, for 2008, 2009, 2010, and 2011, respectively.

**{¶50}** For the year 2012, his June 29, 2012 pay stubs shows he earned $68,556.72 for the first half of the year. The magistrate considered his compensation history and extrapolated the amount of $68,556.72 to arrive at an annual income of $137,114 (= $68,556.72 x 2) for spousal support purposes, while acknowledging that the actual income for 2012 could be larger or smaller than the extrapolated amount. Based on the estimated annual income, the magistrate awarded Wife a monthly support of $4,500, which, pursuant to a "FIN Plan" analysis, would give Wife $3,781 and Husband $4,721 to meet their living expenses.

**{¶51}** When the record reflects that the trial court considered the statutory factors and if the judgment contains detail sufficient for a reviewing court to determine that the support award is fair and equitable, we will uphold the award. *Gentile v. Gentile*, 8th Dist. Cuyahoga No. 97971, 2013-Ohio-1338, ¶ 44, citing *Daniels v. Daniels*, 10th Dist. Franklin No. 07AP-709, 2008 Ohio App. LEXIS 772 (Mar. 4, 2008).

**{¶52}** Our review of the record before us reflects that the magistrate's decision, adopted by the trial court, was based on the duration of the marriage, Wife's physical and mental health issues, her lack of employment outside the home during the marriage, the difficulties of entering the workforce at her age, and the unlikelihood of her developing meaningful employment outside the home, as well as Husband's employment history and

earning abilities. Based on the record, we do not find an abuse of discretion by the trial court in awarding $4,500 per month.

**{¶53}** Although the trial court did not specify the duration of the spousal support (other than noting its termination upon conditions pursuant to R.C. 3105.18(B)), the court specifically stated that it retains jurisdiction to modify the spousal support order.

**{¶54}** A trial court, having reserved jurisdiction, can modify a prior order of spousal support when the court finds "(1) that a substantial change in circumstances has occurred, and (2) that the change was not contemplated at the time of the original decree." *Mandelbaum v. Mandelbaum*, 121 Ohio St.3d 433, 2009-Ohio-1222, 905 N.E.2d 172, paragraph two of the syllabus. *See also Potter v. Potter*, 8th Dist. Cuyahoga No. 99247, 2013-Ohio-3531, ¶ 12, citing *Mandelbaum*.

**{¶55}** On appeal, Husband claims that because of a change in the spousal support statute, he would never be able to demonstrate a change of circumstances warranting a modification of the support ordered by the trial court.

**{¶56}** R.C. 3105.18 governs the award of spousal support and its modification. The prior version of R.C. 3105.18 did not explicitly require a *substantial* and *unforeseen* change in circumstances before the trial court could modify a prior order of support. *Mandelbaum* at ¶ 29. After *Mandelbaum*, R.C. 3105.18 was amended in 2012 to incorporate and clarify these requirements, by adding subsections (F)(1)(a) and (b). Subsection (F)(1)(a) of the current statute requires that "[t]he change in circumstances is substantial and makes the existing award no longer reasonable and appropriate." Subsection (F)(1)(b) requires that

"[t]he change in circumstances was not taken into account by the parties or the court as a basis for the existing award when it was established or last modified, whether or not the change in circumstances was foreseeable."

{¶57} A comparison of *Mandelbaum*, 121 Ohio St.3d 433, 2009-Ohio-1222, 905 N.E.2d 172, and the amended R.C. 3105.18 indicates that their requirements for a modification of support are similar:   the change in circumstances (1) must be sufficiently substantial to make the existing award inappropriate, and (2) must have been unforeseen, i.e., had not been taken into account when the prior support was ordered.

{¶58} Husband claims that he will never be able to demonstrate a change in circumstances warranting a modification despite the trial court's reservation of jurisdiction, because, as he argues, the trial court had already taken into account his age, income, retirements assets, and health conditions in its award of spousal support.

{¶59} Husband's claim is without merit.   The magistrate in its decision specifically stated that "[b]ased on the evidence there is no reason to conclude that either party's earning ability will significantly change in the foreseeable future."   In other words, the record is clear that, in awarding $4,500, the court did *not* take into account the possibility that Husband's earning ability will significantly change in the foreseeable future, whether it is due to his health, the economy, or any other reasons.   Therefore, in the event that his income is sufficiently decreased — or if there is a significant change in Wife's earning ability — such that the ordered support is no longer appropriate or reasonable, Husband will be able to have the trial court reconsider the amount and duration of the support,

pursuant to both R.C. 3105.18 and *Mandelbaum,* 121 Ohio St.3d 433, 2009-Ohio-1222, 905 N.E.2d 172. The second assignment of error is without merit.

### Third Assignment of Error: Attorney Fees

{¶60} Under the third assignment of error, Husband contends the trial court erred in awarding Wife $25,000 in attorney fees.

{¶61} Pursuant to R.C. 3105.73(A), which governs awards of attorney fees in a divorce action, "a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." "In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." *Id.*

{¶62} "An award of attorney fees in a domestic relations action is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion." *Kehoe v. Kehoe*, 8th Dist. Cuyahoga No. 99404, 2013-Ohio-4907, ¶ 18, citing *Dureiko v. Dureiko*, 8th Dist. Cuyahoga No. 94393, 2010-Ohio-5599, ¶ 26. "Our review of the award of attorney fees is limited to determining (1) whether the factual considerations upon which the award was based are supported by the manifest weight of the evidence, or (2) whether the domestic relations court abused its discretion." *Gentile*, 8th Dist. Cuyahoga No. 97971, 2013-Ohio-1338, ¶ 68, citing *Neumann v. Neumann*, 8th Dist. Cuyahoga No. 96915, 2012-Ohio-591, ¶ 6, citing *Gourash v. Gourash*, 8th Dist.

Cuyahoga Nos. 71882 and 73971, 1999 Ohio App. LEXIS 4074 (Sept. 2, 1999), and *Oatey v. Oatey*, 83 Ohio App.3d 251, 614 N.E.2d 1054 (8th Dist.1992).

{¶63} The magistrate, whose decision was adopted by the trial court, looked to R.C. 3105.73 for authorization and guidance in deciding to award attorney fees to Wife. The magistrate found Husband's conduct in this case made the divorce "anything but routine and straightforward," because Husband failed to turn over documents in his possession or to which he had access, in particular, documents regarding Merrill Lynch's compensation programs. The magistrate also noted Wife incurred additional legal fees after Husband refused to sign a settlement previously reached in open court and tried to renegotiate the agreement. Husband also complicated the divorce matter by refusing to acknowledge the clearly marital nature of certain assets, such as the Ohio Catholic Credit Union account. The magistrate found a partial award of attorney fees to Wife equitable because of the disparity of the parties' income.

{¶64} Husband's claims that additional fees were incurred because Wife dismissed a prior filing of the divorce complaint, and then refiled the case, and had four different attorneys throughout the proceedings. Regarding this claim, we note that the magistrate excluded the attorney fees incurred by Wife under the prior filing. The magistrate also explained that much of the discovery in this case had been done by prior counsel, and that the current counsel did not duplicate the discovery efforts.

{¶65} Our reading of the fee statement submitted by Wife's (current) counsel (exhibit No. 73) shows the amount of fees incurred from January to June 2012 to be

$23,308.54.   However, a closer examination of the statement shows that the May 22, 2012 bill erroneously listed Wife's retainer of $10,000, which was deposited into the IOLTA account, as an "expense."   This erroneous accounting accordingly inflated the fees by $10,000.   Thus, the fees for the period of time Wife was represented by her current counsel was actually $13,308.54, not $23,308.54.

{¶66} The amount of $13.308.54 represents (1) $5,229.17 incurred between January 16, 2012 and April 25, 2012, (2) $3,229.50 incurred between May 1 and May 22, 2012, and (3) $4,849.87 incurred between June 5, and June 29, 2012.   The magistrate also found additional legal fees in the amount of $13,000 for the 40 hours (at an hourly rate of $350) counsel spent at the five-day trial from July 17 to July 26, 2012.

{¶67} Given this record, the trial court's award of $25,000 in attorney fees is supported by the evidence and within its sound discretion.   We refuse to disturb it on appeal.   The third assignment of error is without merit.

{¶68} The judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the domestic relations court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.


_____
TIM McCORMACK, JUDGE

MARY J. BOYLE, A.J., and
EILEEN T. GALLAGHER, J., CONCUR