[Cite as *Wormsley v. Wormsley*, 2014-Ohio-3086.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

JIMMIE WORMSLEY,

    PLAINTIFF-APPELLEE,          CASE NO.  9-14-04

    v.

ROBERT WORMSLEY,             O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court
Family Division
Trial Court No. 2013 DR 0120

Judgment Affirmed

Date of Decision:  July 14, 2014

APPEARANCES:

    *Robert C. Nemo*  for Appellant

    *Larry Heiser* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Robert Wormsley, Jr. ("Robert"), appeals the January 2, 2014 judgment of the Marion County Court of Common Pleas, Family Division, granting the complaint for divorce filed by plaintiff-appellee, Jimmie Wormsley ("Jimmie"). Robert assigns as error the trial court's spousal support award to Jimmie in the amount of $1,500 a month until the death of either party or upon Jimmie's remarriage. Robert also appeals the trial court's order requiring him to pay Jimmie's attorney's fees.

{¶2} The parties were married on June 7, 1975, and had two children who are now emancipated adults. Robert worked outside the home during the marriage while Jimmie sporadically worked part-time jobs but primarily remained in the home tending the children and household affairs.

{¶3} On May 7, 2013, Jimmie filed for divorce after almost thirty-eight years of marriage. Robert subsequently filed an answer and the case proceeded to discovery.

{¶4} On October 31, 2013, the parties filed a stipulation which addressed most of the issues in the case. The only matters that remained to be litigated were Jimmie's requests for spousal support and payment of her attorney's fees by Robert, and the trial court's determination of which party was entitled to keep certain gold chains acquired during the marriage. The trial court held a hearing on

these outstanding issues, where each party presented evidence in support of their case.

{¶5} At the hearing, Robert testified that he is fifty-six years old and has a high school diploma as the highest level of his education. Robert stated that he has been employed at General Mills for twenty-two years and works as a bag packer packing fifty pound bakery mixes. Prior to General Mills, Robert worked for the Wilson-Bohannon Block Company for ten months and Quaker Oats for almost fourteen years. Robert testified that he consistently worked overtime—i.e., six or seven eight hour shifts a week—throughout the duration of the parties' marriage. Robert also testified that he worked continuously during the marriage with the exception of approximately one year when he lost his job at General Mills in June 2012. Robert explained that he was terminated from his employment due to failing a drug test. However, after participating in arbitration, Robert was rehired at General Mills in August of 2013.

{¶6} Robert also admitted that in the fall of 2012 he liquidated his 401(k), worth approximately $45,000, without Jimmie's knowledge and spent all but $5,000.[1] Robert agreed that Jimmie should be awarded some spousal support. He testified that $600 or $700 seemed to be a "fair" amount. (Tr. 11). Robert submitted paychecks dating from August 22, 2013 to September 19, 2013 as

---

[1] In the stipulated division of assets submitted by the parties, Jimmie was given the martial home free and clear of any claims by Robert and unencumbered by any liens or debts. At the time of the hearing, the marital home was valued at $45,000—approximately the same amount as the 401(k) liquidated by Robert.

evidence of his income. His paychecks demonstrated that he earned a base pay of $20.44 per hour and worked a significant amount of overtime at $30.66 per hour.

{¶7} Jimmie testified that she is fifty-eight years old and also has a high school diploma as the highest level of her education. Jimmie recalled that she worked during the beginning of the marriage at a child care center where their oldest son also attended. However, their son began to experience health problems which required her to leave her job at the child care center. Jimmie explained that throughout the marriage she occasionally had part-time jobs working at minimum wage. Jimmie testified that since April 6, 2012, she has been employed as a department manager at Rural King earning $8.66 per hour. Jimmie also submitted numerous paychecks from her employer as evidence of her income, which demonstrated that she typically worked between seventy and seventy-nine hours in a two week pay period. Jimmie stated that her employer does not always give her forty hours a week despite the fact that she would be willing to work those hours.

{¶8} Jimmie testified that prior to Robert losing his job in June of 2012 she received health insurance benefits through Robert's employment, which covered the cost of the medications she takes on a regular basis. She explained that she is a diabetic and suffers from high blood pressure and high cholesterol, and that she will need to purchase health insurance benefits after the divorce is finalized. She also testified that she received no financial support from Robert after he regained

his job at General Mills in August of 2013. Jimmie confirmed that she was seeking spousal support that would serve to equalize the income between the parties.

{¶9} Each party provided similar testimony regarding their standard of living during the marriage. It was very seldom that they dined at restaurants. They lived in a modestly priced home, drove older model vehicles, and took vacations when their children were young, but never as a couple.

{¶10} On November 8, 2013, the trial court issued a ruling on the contested issues remaining between the parties. The trial court calculated the parties' monthly income and expenses based on the evidence submitted. In assessing Robert's income, the trial court averaged the overtime hours from the five paychecks he submitted as evidence at the hearing. The trial court "then annualized his overtime earnings based on the average number of hours at $30.66" and added this number to his base earning wages of $20.44 per hour to derive an annual income for Robert of $56,796.63. (Doc. No. 38 at 4). The trial court attributed an annual income of $16,494.02 to Jimmie based on the evidence she submitted at the hearing.

{¶11} The trial court discussed the relevant factors for determining whether spousal support is appropriate under R.C. 3105.18(A) and (C). Specifically, the trial court stated the following:

> **The Court finds that an equalization of incomes is a reasonable and appropriate approach for this long term marriage given the facts and circumstances and the earning abilities of the parties. The Court therefore finds that an award of spousal support of $1,500.00 per month is reasonable and necessary. The Court shall retain jurisdiction to modify the amount of spousal support only.**

(Doc. No. 38 at 4).

{¶12} In the same ruling, the trial court discussed a billing statement from Jimmie's attorney reflecting fees in the amount of $2,450. The trial court found the attorney's fees to be both reasonable and necessary and ordered Robert to be responsible for paying the fees within sixty days of the date of the final divorce decree.

{¶13} On January 2, 2014, the trial court issued its Judgment Entry of Divorce incorporating its prior ruling on the spousal support and attorney's fees matters. With respect to the spousal support payments, the trial court specifically stated in its Judgment Entry that:

> **The obligation of [Robert] to pay such payments to [Jimmie] * * * shall end upon the following events (whichever occurs first): the death of either party or [Jimmie's] remarriage. The Court shall retain jurisdiction over the amount of spousal support only.**

(Doc. No. 39 at 4).

{¶14} Robert subsequently filed this appeal, asserting the following assignments of error.

**ASSIGNMENT OF ERROR NO. I**

**THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING APPELLEE $1,500.00 PER MONTH IN SPOUSAL SUPPORT.**

**ASSIGNMENT OF ERROR NO. II**

**THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ORDERED APPELLANT TO PAY SPOUSAL SUPPORT FOR AN INDETERMINATE PERIOD OF TIME.**

**ASSIGNMENT OF ERROR NO. III**

**THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING ATTORNEY'S FEES TO APPELLEE.**

*First Assignment of Error*

{¶15} In his first assignment of error, Robert challenges the trial court's award of $1,500 in spousal support.  Even though Robert conceded at the hearing that Jimmie is entitled to some spousal support, he disputes on appeal the amount the trial court awarded.

{¶16} In matters relating to spousal support, the "trial court is provided with broad discretion in deciding what is equitable upon the facts and circumstances of each case."  *Kunkle v. Kunkle,* 51 Ohio St.3d 64, 67 (1990).  Thus, a spousal support decision is generally left to a trial court's discretion, subject to the statutory factors.  *See* R.C. 3105.18(C).  "A reviewing court cannot substitute its judgment for that of the trial court unless, considering the totality of the circumstances, the trial court abused its discretion."  *Kunkle* at 67.

{¶17} R.C. 3105.18(B) allows trial courts, upon a party's request and after property distribution, to award reasonable spousal support. R.C. 3105.18(C) provides a list of factors for the trial court to consider in awarding spousal support and states the following:

> **(1)  In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:**
>
> **(a)  The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;**
>
> **(b)  The relative earning abilities of the parties;**
>
> **(c)  The ages and the physical, mental, and emotional conditions of the parties;**
>
> **(d)  The retirement benefits of the parties;**
>
> **(e)  The duration of the marriage;**
>
> **(f)  The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;**
>
> **(g)  The standard of living of the parties established during the marriage;**
>
> **(h)  The relative extent of education of the parties;**
>
> **(I)  The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;**

**(i)   The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;**

**(j)   The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;**

**(k)   The tax consequences, for each party, of an award of spousal support;**

**(l)   The lost income production capacity of either party that resulted from that party's marital responsibilities;**

**(m) Any other factor that the court expressly finds to be relevant and equitable.**

**(2)   In determining whether spousal support is reasonable and in determining the amount and terms of payment of spousal support, each party shall be considered to have contributed equally to the production of marital income.**

{¶18} In the instant case, Robert contends that the trial court erred when it included his overtime hours and pay in its calculation of his annual income and when it attempted to equalize the parties' incomes based on that figure. Robert argues that the trial court should have limited its calculation of his annual income to his base pay of $20.44 per hour at forty hours a week and should not have considered his overtime because the hours are "not guaranteed." Robert also challenges the trial court's calculation of his annual income on the basis that it was

drawn from a "small sample" of five paychecks from August 22, 2013 to September 19, 2013.

{¶19} First, we are not sympathetic to Robert's complaint regarding the trial court's use of these particular paychecks to determine his annual income given the fact that these five paychecks are the only documentation of his income that he chose to submit at the hearing. Second, both Robert and Jimmie testified that Robert consistently worked overtime hours throughout the course of the marriage. Therefore, we do not find the trial court abused its discretion by including a figure for overtime wages in calculating Robert's annual income.

{¶20} We also note that "although a trial court is not required to equalize incomes, it is not prohibited from doing so where such a result is reasonable and equitable." *Arthur v. Arthur*, 3rd Dist. No. 17–11–28, 2012–Ohio–1893, ¶ 33. In its November 8, 2013 ruling on the issue of spousal support, the trial court listed several of the factors in R.C. 3105.18(C)(1), including the parties' current incomes, their relative earning abilities, their ages, Jimmie's health insurance expenses, Robert's retirement benefits, the duration of the marriage, their standard of living during the marriage, and the fact that Jimmie was mainly a stay-at-home mother and homemaker who has accrued no retirement benefits from her minimal employment outside the home. (Doc. No. 38). While the parties' annual incomes are similar after the trial court's spousal support award, it is evident from the

record that the trial court properly considered the statutory factors in calculating the amount of spousal support. Consequently, we cannot find the trial court's spousal support award to be an abuse of discretion under the circumstances.

*Second Assignment of Error*

{¶21} In his second assignment of error, Robert argues that the trial court erred in ordering him to pay spousal support until the death of either party or until Jimmie remarries insofar as the trial court retained jurisdiction to modify the amount of the support only. The Supreme Court of Ohio has held "that except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony should provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities." *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 69 (1990).

{¶22} Here, the parties were married for thirty-eight years. Jimmie is fifty-eight years old and has a high school education. With the exception of a few part-time jobs, Jimmie did not earn an income until the last year of the marriage when she separated from Robert. Even though she is currently employed, she is making a low wage of $8.66 an hour with no benefits. In setting forth the spousal support

award, the trial court specifically noted the length of the marriage and the earning abilities of the parties. Under these circumstances, we find no abuse of discretion in the trial court setting an indefinite period of time for Jimmie to receive spousal support. Accordingly, Robert's second assignment of error is overruled.

*Third Assignment of Error*

**{¶23}** In his third assignment of error, Robert argues that the trial court erred in ordering him to be responsible for paying Jimmie's attorney's fees. " 'An award of attorney's fees in a domestic relations action is committed to the sound discretion of the trial court.' " *Cichanowicz v. Cichanowicz*, 3d Dist. Crawford No. 3–13–05, 2013–Ohio–5657, ¶ 92, quoting *Flowers v. Flowers*, 10th Dist. Franklin No. 10AP 1176, 2011–Ohio–5972, ¶ 21, citing *Stuart v. Stuart*, 144 Ohio St. 289 (1944) (additional citation omitted). "This court will not reverse an award of attorney fees absent a finding that the trial court abused its discretion." *Id.*, citing *Stuart*.

**{¶24}** On May 7, 2013, Jimmie filed a motion for attorney's fees requesting the trial court order Robert to pay her attorney's fees pursuant to R.C. 3105.73(A).[2] In her motion, Jimmie highlighted the parties' income disparity and claimed Robert had the ability to pay her attorney's fees. At the hearing, Jimmie

---

[2] R.C. 3105.73(A) states: " In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate."

submitted a billing statement of her attorney's fees as an exhibit. The parties agreed the fees were reasonable and necessary, however Robert maintained that he should not be held responsible for the payment of Jimmie attorney's fees.

**{¶25}** In its November 8, 2013, ruling ordering Robert to pay Jimmie's attorney's fees, the trial court specifically found the $2,450 in fees reflected on the billing statement provided by Jimmie's attorney to be reasonable and necessary. Nor can we find anything in the record to indicate that the award of attorney's fees was unfounded, contrary to law, or otherwise improper. Accordingly, we do not find the trial court abused its discretion in ordering Robert to pay Jimmie's attorney's fees. Therefore, Robert's third assignment of error is overruled.

**{¶26}** For the foregoing reasons, the assignments of error are overruled and the judgment is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and PRESTON, J., concur.**

**/jlr**