[Cite as *Ernsberger v. Ernsberger*, 2014-Ohio-4470.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100675**

## PAUL R. ERNSBERGER

PLAINTIFF-APPELLANT

vs.

## DEBRA L. ERNSBERGER

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-13-345651

**BEFORE:** Kilbane, J., Celebrezze, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** October 9, 2014

**ATTORNEY FOR APPELLANT**

Edgar H. Boles
Moriarty & Jaros
30000 Chagrin Boulevard
Suite 200
Pepper Pike, Ohio 44124

**ATTORNEYS FOR APPELLEE**

Joy B. Savren
618 Hanna Building
1422 Euclid Avenue
Cleveland, Ohio 44115

Kathryn G. Eloff
James M. Willson
Eloff & Willson, L.L.P.
3820 Monticello Boulevard
Cleveland Heights, Ohio 44121

MARY EILEEN KILBANE, J.:

{¶1} Plaintiff-appellant, Paul Ernsberger ("husband"), appeals from the judgment entry issued in his divorce from defendant-appellee, Debra Ernsberger ("wife"), that ordered him to pay spousal support subject to the parties' death or the wife's remarriage or cohabitation. He assigns seven errors for our review. Having reviewed the record and controlling case law, we affirm.

{¶2} The parties were married in Illinois on June 24, 1984, and had one child who is now emancipated. The husband filed his complaint for divorce on February 12, 2013.[1] Several weeks later, on March 28, 2013, the parties entered into a settlement agreement that divided their assets and debts.[2] The parties also stipulated that each party was entitled to a divorce on the grounds of incompatibility, pursuant to R.C. 3105.01(K). The parties' remaining issues,[3] including Debra's claim for spousal support and attorney

---

[1]The husband initially filed this matter on March 2, 2012, but the parties filed a joint notice of dismissal on January 30, 2013.

[2]In accordance with the separation agreement, the husband is to pay $2,000 of certain enumerated debts, and the wife is to pay approximately $10,000 of enumerated debts. The husband's pension, with an approximate value of $280,792, is to be equally divided, after offsets to the husband for, inter alia, "marital residence sale deficiency," and the husband's advance of costs for preparing the house for sale. The separation agreement also provides that the husband would have a "set-aside amount" of $30,000 to be excluded from the division, pending the wife's documentation of the value of her pension with Sloan-Kettering.

[3]Other issues that were tried in this matter included each parties' claim that the other had committed financial misconduct, and the determination of the end date of the marriage (for purposes of dividing husband's retirement account). However, these issues are not germane to the instant appeal.

fees, were heard before a magistrate over four days, March 28, 2013, April 5, 2013, May 10, 2013, and May 14, 2013.

{¶3} The evidence demonstrated that the husband is a tenured associate professor of nutrition at Case Western Reserve University. At the time of trial, he was 58 years old. He earns $88,665 and has earned from $2,400-$5,000 per year from various royalties and consulting work. He receives health insurance as a benefit of his employment. He makes a voluntary contribution of $1,565 per month to his retirement plan, but he testified that he stopped making such contributions after the court required him to pay a temporary support order of $1,040 per month. He also purchased a 2012 Prius and has a monthly car payment of $875. He works approximately 50 hours per week and plays in a Klezmer orchestra.

{¶4} The husband testified that the marriage began as a 50/50 partnership with both spouses working and taking care of household responsibilities. During the first few years of the marriage, the wife worked as a research assistant at Sloan-Kettering where she made $20,000 per year. The wife took a three-month maternity leave after their son was born. She then went to school full time and obtained her undergraduate and graduate degrees in social work at Case Western Reserve University, with tuition paid as a benefit of the husband's employment. The wife had several part-time jobs throughout the marriage, with several extended periods of unemployment. She had a full-time salaried job from her home from 2011-2012, earning $35,000 per year, but she last worked in October 2012.

**{¶5}** Dr. Richard Koletsky, the husband's physician, testified that the husband has limited and declining ability to work because he suffers from sarcodosis (a lung disease), ankylosing splondylitis (an autoimmune disease), type 2 diabetes, and bouts of congestive heart failure. His conditions are chronic and progressive, and he suffers from frequent episodes of shortness of breath from congestive heart failure and pulmonary hypertension.

**{¶6}** Vocational expert Barbara Burk ("Dr. Burk") conducted a vocational assessment of the wife at the marital home on February 15, 2013. Dr. Burk learned that the wife has a master's degree in social work from Case Western Reserve University's School of Applied Social Sciences and received A's in all of her classes. The wife was a licensed social worker, but her license lapsed in 2007. In order to obtain a current license, the wife would have to take continuing education courses and pass an examination. The wife also worked as a research assistant with Sloan-Kettering, and her most recent employment was a full-time position with the Virginia Commonwealth University. Dr. Burk opined that once licensed, the wife could obtain employment as a social worker and earn approximately $50,000 per year. Dr. Burk also stated that the wife would have a similar wage earning potential if she obtained work as a research assistant.

**{¶7}** Dr. Burk admitted on cross-examination, however, that she is not qualified to testify regarding the wife's functional ability due to medical issues because that is a medical determination. Dr. Burk also acknowledged that the wife obtained letters from

two of her doctors, Dr. Marc Burkowitz ("Dr. Burkowitz") and Dr. Michael Pollack ("Dr. Pollack"),[4] regarding her physical conditions, but in accordance with instructions from the husband's attorney, she did not read them. In response to hypothetical questions that were based upon these letters, Dr. Burk maintained that, taking various medical conditions into account, the wife could obtain a sedentary employment or employment that is primarily done in a seated capacity with two hours of walking. Dr. Burk conceded, however, that in light of the wife's age, health, and mobility issues it may take her a while to find employment.

**{¶8}** The wife testified that she is 59 years old. At the time of the parties' marriage, she had a high school diploma. She worked at Sloan-Kettering as a research assistant from 1984-1989. After the parties moved to Cleveland, she attended Case Western Reserve University full time and obtained her undergraduate degree in 1996 and her master's degree in 1999. She was out of the work force from 2000-2003 while she cared for the parties' son. The wife worked part time from 2003-2010, generally less than 20 hours per week, and earned between $12-$18 per hour. From 2011-2012, the wife worked from her home as a research assistant and earned $35,000, but that study ended and she has been unemployed since that time. She receives $364 per week or approximately $19,000 per year from unemployment.

---

[4]These letters were not admitted, but the record suggests that the wife is obese, and she suffers from Crohn's disease, major depression and anxiety, and a chronic flat foot deformity that impinges her ability to stand or walk for long periods of time. Wife's counsel was permitted to use the letters to formulate hypothetical questions regarding the wife's ability to obtain employment.

**{¶9}** The wife testified that she likes to work and wants to find a job. She checks the Cleveland Clinic online career board every day and has applied for at least five jobs. She also regularly checks other websites like monster.com and indeed.com. She has applied for almost 70 jobs. She also stated that it will cost her approximately $700 to take the continuing education classes she needs before she can take the social worker licensing examination, and she has applied for scholarships. She stated, however, that she believed that most of the jobs that are available in her field require the LSW degree and working under supervision for two years.

**{¶10}** With regard to her health issues, the wife stated that she was born with a "flat foot" deformity in her left foot. Although she wore corrective orthodics to deal with this issue in the past, her ankle has begun to collapse. She has used a cane at various points in the past ten years. She had surgery on her ankle approximately seven years ago, but it was unsuccessful. As a result, she now has mobility issues. In January 2013, she fell and broke her humerus bone. She goes to physical therapy twice a week. She also has Crohn's disease and irritable bowel syndrome (causing bouts of sudden diarrhea), diabetes, anxiety, depression, and suffers from panic attacks, all of which have put her in a position of seeking work from her home.

**{¶11}** In addition, she incurs $400 per month for medication that is not covered by insurance because of the deductible amount of her health insurance. She learned that her COBRA health insurance payment will be $500 per month. She also pays $595 each month for utilities and household maintenance, which includes paying for lawn cutting

and snow removal that she is unable to do herself. She plans on moving to an apartment with a monthly rental of $300 per month, including all utilities except electricity. As of the start of trial, she had not begun receiving the temporary alimony that the court had ordered. She admitted that there is an outstanding debt from a line of equity taken against the house, but she testified that the house was purchased using her inheritance as a down payment.

{¶12} With regard to any pension benefits, she stated that she has made various attempts to determine what pension benefits she may have from her job with Sloan-Kettering, but she has been unable to obtain that information to date.

{¶13} The wife's neighbor, Robert Michael, testified that beginning in early 2013, the wife has paid him to drive her to the grocery store and to various appointments. He has earned $60 from five such trips. On some of these occasions, the wife has used a wheelchair or motorized scooter.

{¶14} The wife also presented testimony from Cathy Niswonger ("Niswonger"), the husband's live-in girlfriend. Niswonger stated that she is a secretary at the Cleveland Clinic and earns $16.97 per hour. The husband contributes to the mortgage, groceries, maintenance, and utilities and has given her monthly sums ranging from $408 to $1,224. They also vacation together.

{¶15} On June 27, 2013, the magistrate issued a 26-page decision. The magistrate noted that the husband's "physical health and mental health have been separately reviewed in this Decision and are of great concern." The magistrate also concluded:

[The wife's] physical health and mental health are also of great concern. While Plaintiff [husband] has so far been able to triumph over his medical conditions, Defendant [wife] is defined by hers. Her physical and mental health has impacted her ability to work outside the home during the marriage and will impact the kind of work that she can perform in the future.

**{¶16}** The magistrate recommended that the husband pay the wife $1,000 per month, until either party dies or the wife remarries or cohabitates, and further recommending that the amount be increased to $2,000 after the marital residence is sold. The magistrate also recommended that the husband pay the wife $18,000 of her $25,030.45 attorney fee expense as additional spousal support. The magistrate found no financial misconduct and determined the de facto termination date of the marriage to be December 15, 2011.

**{¶17}** The husband filed objections to the magistrate's decision and complained that the findings regarding the wife's medical conditions and disability were not based upon expert medical testimony, the decision failed to acknowledge that the wife obtained free tuition from the husband's employment, and failed to recognize his medical conditions. On November 1, 2013, the trial court modified the magistrate's decision to include the following additional language:

[Plaintiff asserts] that the Magistrate found [wife] to be disabled. No such finding appears anywhere in the Magistrate's Decision, and if, in fact, that were a finding, the Magistrate's award should have been much greater than that awarded. The Magistrate did find that the [wife's] physical and mental health during the marriage played a role in the work that [wife] performed. It is axiomatic then that [wife's] physical and mental health will continue to play a role in the work [wife] performs in the future.

**{¶18}** The husband now appeals and assigns the following errors for our review:

Assignment of Error No. 1

The trial court erred as a matter of law when it failed to read and review the record in ruling upon Plaintiff's objections.

Assignment of Error No. 2

The trial court erred as a matter of law in awarding attorney fees in violation of Loc.Rule 21(B).

Assignment of Error No. 3

The trial court erred and abused its discretion in awarding support upon a finding that Appellee's physical and mental health has impacted her ability to work outside the home and will impact the kind of work that she can perform in the future.

Assignment of Error No. 4

The trial court erred and abused its discretion by adopting Appellee's argument, enhanced by her appearance in court on several occasions in a wheelchair (she had kept in the basement for 10 years but never used until court) and that Appellee suffered from disabling limitations which legitimately impacted her ability to work. To the contrary, the evidence sustained the conclusion that Appellee was unemployed and under-employed as a tactic to enhance a support award.

Assignment of Error No. 5

The trial court erred and abused its discretion in awarding support upon a finding that Appellant has been able to triumph over his medical conditions but Appellee is defined by hers. Appellee presented no competent or admissible evidence of any medical condition, disability or reason she is unable to work or impeded in her ability to find, hold or retain employment outside the home or otherwise.

Assignment of Error No. 6

The trial court erred and abused its discretion in adopting the incompetent, inadmissible hearsay evidence presented by Appellee and ignoring the first-hand, eyewitness testimony presented by Appellant as well as ignoring or discounting expert testimony of an acknowledged experienced and respected vocational expert, Barbara Burk.

Assignment of Error No. 7

The trial court erred and abused its discretion in awarding Appellee an excessive amount of Temporary and Permanent spousal support, beyond Appellant's ability to pay, Appellee's actual need, and unreasonable in amount and duration. The court adopted Appellee's patently erroneous financial information and precluded Appellant from challenging Appellee's evidence.

Court Review of Magistrate's Decision

{¶19} In his first assignment of error, the husband asserts that the trial court erred in failing to "read and review the record in ruling upon [husband's] objections" to the magistrate's decision, because the court did not reference any particular testimony or exhibit.

{¶20} Pursuant to Civ.R. 53(D)(4)(d),

(d) Action on objections.

If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate.

{¶21} However, the trial court is not required to "comment or reference" any portion of the record in undertaking its independent review of the record. *Pietrantano v. Pietrantano*, 12th Dist. Warren No. CA2013-01-002, 2013-Ohio-4330, ¶ 18.

**{¶22}** When the trial court states that it has conducted an independent review, we must presume that the trial court did exactly that. *Rodriguez v. Rodriguez*, 3d Dist. Mercer No. 10-13-08, 2013-Ohio-4411, ¶ 18. An appellate court "must presume that a trial court has performed an independent review of the magistrate's recommendations unless the appellant affirmatively demonstrates the contrary." *Cottrell v. Cottrell*, 12th Dist. Warren No. CA2012-10-105, 2013-Ohio-2397, ¶ 93, quoting *Gilleo v. Gilleo*, 3d Dist. Mercer No. 10-10-07, 2010-Ohio- 5191, ¶ 46.

**{¶23}** In this matter, the trial court stated that it had considered the "Magistrate's Decision filed June 27, 2013, pleadings, exhibits, and complete transcript[.]" Further, in rejecting the husband's claim that the magistrate found the wife to be disabled, the court opined that "if, in fact, that were a finding, the Magistrate's award of spousal support should have been much greater," and this additionally supports the court's statement that it reviewed the full record. Moreover, the husband has presented no evidence that the court failed to conduct an independent review, therefore, we apply the presumption that the court did in fact perform its duties under Civ.R. 53(D)(4)(d).

**{¶24}** The first assignment of error is therefore without merit.

<u>Attorney Fees</u>

**{¶25}** In his second assignment of error, the husband asserts that the trial court erred in awarding the wife attorney fees.

**{¶26}** Our review of the award of attorney fees is limited to determining (1) whether the factual considerations upon which the award was based are supported by the

manifest weight of the evidence, or (2) whether the domestic relations court abused its discretion. *Neumann v. Neumann*, 8th Dist. Cuyahoga No. 96915, 2012-Ohio-591,¶ 6, citing *Gourash v. Gourash*, 8th Dist. Cuyahoga Nos. 71882 and 73971, 1999 Ohio App. LEXIS 4074 (Sept. 2, 1999), and *Oatey v. Oatey*, 83 Ohio App.3d 251, 614 N.E.2d 1054 (8th Dist.1992).

{¶27} Pursuant to R.C. 3105.73(A), a court may award all or part of reasonable attorney fees and litigation expenses to either party if the court finds the award equitable. In determining whether such an award is equitable, "the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." R.C. 3105.73(B); *Mlakar v. Mlakar*, 8th Dist. Cuyahoga No. 98194, 2013-Ohio-100, ¶ 32.

{¶28} Here, the husband complains that the trial court erred in awarding the wife $18,000 for attorney fees because he does not have assets to pay this award. Although the assets in this matter were limited, the court could properly consider the parties' disparate incomes in deriving the attorney fees award. *Reynolds-Cornett v. Reynolds*, 12th Dist. Butler No. CA2013-09-175, 2014-Ohio-2893, ¶ 29-30.

{¶29} The husband also complains that the award does not meet the requirement of Loc.R. 21 because the fee is too large for this matter, and the attorney's itemized statement does not describe the services rendered with sufficient particularity.

{¶30} Loc.R. 21(C) provides:

At the time of the final hearing on the motion or pleading that gives rise to the request for attorney fees, the attorney seeking such fees shall present:

(1) An itemized statement describing the services rendered, the time for such services, and the requested hourly rate for in-court time and out-of-court time.

(2) Testimony as to whether the case was complicated by any or all of the following:

(a) new or unique issues of law;

(b) difficulty in ascertaining or valuing the parties' assets;

(c) problems with completing discovery;

(d) any other factor necessitating extra time being spent on the case;

(3) Testimony regarding the attorney's years in practice and experience in domestic relations cases; and

(4) Evidence of the parties' respective income and expenses, if not otherwise disclosed during the hearing.

**{¶31}** In accordance with Loc.R. 21(C), expert testimony is not required to prove reasonableness of attorney fees.

**{¶32}** In this matter, counsel for the wife presented an itemized statement that defendant had incurred attorney fees of approximately $25,000 from 124.6 hours at $200 per hour. The fees statement detailed phone calls, rather than in-person meetings, which counsel explained were because of the wife's mobility issues. The attorney further explained that the case was complicated by difficulties in preparing the house for sale, the wife's current unemployment, and difficulty reaching an agreement over the duration of the spousal support. The fees statement also set forth the nature of the service, including "draft separation agreement," "amend separation agreement," and "research,

draft trial brief," etc. Neither the hourly rate nor the number of hours was excessive. The itemized statement and testimony were sufficient under Loc.R. 21. In addition, the wife testified that she did not have funds to pay for her attorney and had paid most of the bills by charging them to a credit card. The court recognized the limited assets and the factors complicating the proceedings, and also ordered significantly less attorney fees than the amount sought. We find no abuse of discretion.

{¶33} The second assignment of error is without merit.

Spousal Support Award

{¶34} In his third, fifth, sixth, and seventh assignments of error, the husband asserts that the spousal support award is erroneous because the trial court concluded that the wife's physical and mental health issues have and will impact her ability to work outside the home. The husband objects that this conclusion was unsupported by any expert testimony from the wife and is contrary to the husband's vocational expert's testimony. In opposition, the wife complains that the husband has not provided this court with a complete transcript, and therefore, we must presume regularity.

{¶35} With regard to the issue of the appellate record, the parties agree that the issues of this case were heard before a magistrate over four days, March 28, 2013, April 5, 2013, May 10, 2013, and May 14, 2013. The transcripts from these days have been provided for our review, but it appears that the transcript of the April 1, 2013 temporary support hearing and the transcript of the June 6-7, 2013 closing arguments have not been provided. Because the issue of temporary support is not germane to this appeal and the

closing arguments are not evidence, we will not simply apply the presumption of regularity and affirm. Rather, we will review this matter on the record provided, which is the same record reviewed by the trial court in ruling upon the objections to the magistrate's decision.

{¶36} With regard to our standard of review of spousal support issues, this court reviews such awards for an abuse of discretion. *See Dunagan v. Dunagan*, 8th Dist. Cuyahoga No. 93678, 2010-Ohio-5232, ¶ 12; *Robinson v. Robinson*, 8th Dist. Cuyahoga No. 97933, 2012-Ohio-5414, ¶ 22.

{¶37} In determining whether to grant spousal support and in determining the amount and duration of the payments, the trial court must consider the factors listed in R.C. 3105.18. *Id.* The factors the trial court must consider include each party's income, earning capacity, age, retirement benefits, education, assets and liabilities, and physical, mental and emotional condition; the duration of the marriage; their standard of living; inability to seek employment outside the home; contributions during the marriage; tax consequences; and lost income because of a party's fulfillment of marital responsibilities. R.C. 3105.18(C)(1)(a)-(m). The trial court is not required to comment on each statutory factor; the record need only show that the court considered the statutory factors when making its award. *Carman v. Carman*, 109 Ohio App.3d 698, 703, 672 N.E.2d 1093 (12th Dist.1996); *Rossi v. Rossi*, 8th Dist. Cuyahoga Nos. 100133 and 100144, 2014-Ohio-1832, ¶ 108. In addition, the trial court is free to consider any other factor that the court finds to be "relevant and equitable." R.C. 3105.18(C)(1)(n). If the record

reflects that the trial court considered the statutory factors, and if the judgment contains detail sufficient for a reviewing court to determine that the support award is fair, equitable, and in accordance with the law, the reviewing court will uphold the award. *Rossi,* citing *Chattree v. Chattree,* 8th Dist. Cuyahoga No. 99337, 2014-Ohio-489, ¶ 71, *Schoren v. Schoren*, 6th Dist. Huron No. H-04-019, 2005-Ohio-2102, ¶ 11.

{¶38} Applying R.C. 3105.18(C)(1)(a), the court noted that there is no current income from property. Under R.C. 3105.18(C)(1)(b), the court noted that the husband earns $88,665 plus health insurance, and that the wife's unemployment provides her with approximately $19,000 per year. Pursuant to R.C. 3105.18(C)(1)(c), the court noted both parties' ages and found that both parties' physical and mental health is "of great concern," but the husband

> has so far been able to triumph over his medical conditions, [whereas] defendant [wife] is defined by hers. Her physical and mental health has impacted her ability to work outside the home during the marriage and will impact the kind of work that she can perform in the future.

Under R.C. 3105.18(C)(1)(d), the court considered that the husband had a retirement account with his employer and that he will have the benefit of future contributions. Pursuant to R.C. 3105.18(C)(1)(e), the court noted the 27-year duration of the marriage. R.C. 3105.18(C)(1)(f) is not applicable and under R.C. 3105.18(C)(1)(g), the court found that the parties maintained a middle class standard of living during the marriage. In terms of relative educations, under R.C. 3105.18(C)(1)(h) and (k), the court observed that "should [the wife] seek to return to work as a social worker, she would need to expend additional monies for fees, exams and course work." Under R.C. 3105.18(C)(1)(i),

temporary support had been granted.  Pursuant to R.C. 3105.18(C)(1)(j) and (m), the court observed that there "was some evidence that [the wife] lost income production capacity as a result of her marital responsibilities."  From the foregoing, the decision of the trial court is well supported in the record, and there is competent, credible evidence going to all of the statutory elements for establishing a spousal support order.

{¶39} The husband strongly disputes the trial court's conclusions regarding the wife's medical conditions.  He maintains that the trial court erred in concluding that the wife suffers from "disabling limitations" that legitimately impact her ability to work, and that the trial court's conclusions are erroneous because he presented vocational expert testimony to establish her employability and she did not.

{¶40} As an initial matter, with regard to the claim that the trial court erred in concluding that the wife suffers from "disabling limitations," the record reveals that neither the magistrate nor the trial court made any such finding.  The trial court stated as follows:

> The crux of Plaintiff's Objections with regard to the spousal support award to Defendant centered around Plaintiff's assertion that the Magistrate found Defendant to be disabled.  No such finding appears anywhere in the Magistrate's Decision, and if, in fact, that were a finding, the Magistrate's award of spousal support should have been much greater than that awarded.

{¶41} The husband also maintains that the wife's medical conditions do not preclude her from employment and do not confine her to her home.  He further maintains that she needlessly used a wheelchair during trial.

{¶42} Appellate courts generally defer to a trial court's decision regarding credibility because the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Plata v. Plata*, 8th Dist. Cuyahoga No. 81772, 2003-Ohio-3948, ¶ 17; *Albright v. Putman-Albright*, 2d Dist. Montgomery No. 25824, 2014-Ohio-622, ¶ 14; *Oliver v. Oliver*, 5th Dist Tuscarawas No. 2012 AP 11 0067, 2013-Ohio-4389, ¶ 40; *Kim v. Kim*, 6th Dist. Lucas No. L-02-1179, 2003-Ohio-4969, ¶ 5. It is likewise the prerogative of the trier of facts to determine the credibility of expert witnesses and the weight to be accorded their testimony. *Shultz v. Shultz*, 5th Dist. Stark No. 2004CA00306, 2005-Ohio-3640, ¶ 55.

{¶43} In this matter, the husband's expert did not take into consideration any physical limitations, medical issues, or psychological conditions that could limit her ability to sustain the type of employment for which he believes she is qualified. The expert also did not address the issue of the lengthy absences from the work force.

{¶44} Furthermore, it "is not necessary for a party to present expert medical testimony substantiating certain medical problems where the injured party testifies and is subject to thorough cross-examination." *Gullia v. Gullia*, 93 Ohio App.3d 653, 663, 639 N.E.2d 822 (8th Dist.1994). In that case, the husband argued that the trial court committed reversible error in relying upon the testimony of the wife regarding the nature and extent of her medical condition and in failing to require expert medical testimony. The *Gullia* court held that a "trial court is not precluded from allowing [wife] to testify

regarding her own medical condition, especially where [wife] is subject to cross-examination." *Id. Accord Poling v. Poling,* 10th Dist. Franklin No. 13AP-189, 2013-Ohio-5141, ¶ 31-33.

**{¶45}** The husband insists, however, that medical expert testimony was required in this matter because the magistrate concluded that the wife's mental and physical health "impacted her ability to work outside the home." In support of this contention, he cites to this court's decision in *Potter v. Potter*, 8th Dist. Cuyahoga No. 99247, 2013-Ohio-3531, ¶ 26, in which this court quoted a portion of the magistrate's decision as follows: "'If the Defendant had genuine health related circumstances that prevented him from seeking work, the convincing and proper evidence to that effect should have been presented at trial. It was not.'" *Id*. at ¶ 26. *Potter* does not support this argument, however, because the *Potter* court allowed the husband to testify extensively about his medical condition but ultimately concluded that his evidence was not sufficient to support a modification of a support order. This court stated:

Finally, William argues the magistrate abused his discretion by excluding evidence pertaining to his health conditions. He argues that he was competent to testify as to the treatment he received, surgeries he has undergone, and any other issue regarding his health. However, the magistrate did not exclude William's testimony about his conditions, he excluded unauthenticated letters from out-of-court medical experts pursuant to Evid.R. 702. Moreover, as previously explained, the parties were aware

of William's diabetes and heart disease for several years and any deterioration in William's health was contemplated at the time of the divorce. Therefore, the court heard evidence regarding the complications from William's diabetes, but found that it did not warrant a modification of spousal support.

{¶46} The husband additionally complains that the wife's counsel was permitted to use an unauthenticated and inadmissible letter from a physician to formulate hypothetical questions during cross-examination of the vocational expert. The hypothetical questions asked Dr. Burk to assume that the wife has mobility issues, can only work from home, uses a wheelchair, has Crohn's disease, and suffers from panic attacks. He maintains that none of these assumptions are grounded in evidence.

{¶47} A decision to admit or exclude evidence will be upheld absent an abuse of discretion. *O'Brien v. Angley*, 63 Ohio St.2d 159, 163, 407 N.E.2d 490 (1980). Even in the event of an abuse of discretion, a judgment will not be disturbed unless the abuse affected the substantial rights of the adverse party or is inconsistent with substantial justice. *Id*. at 164. Likewise, whether a hypothetical question is proper lies within the trial court's discretion. *Knowlton v. Schultz*, 179 Ohio App.3d 497, 2008-Ohio-5984, 902 N.E.2d 548, ¶ 60 (1st Dist.).

{¶48} Under Evid.R. 705, the hypothesis upon which an expert witness is asked to state an opinion must be based upon facts within the witness's own personal knowledge

or upon facts shown by other evidence. *Sowers v. Middletown Hosp.*, 89 Ohio App.3d 572, 586, 626 N.E.2d 968 (12th Dist.1993).

**{¶49}** Although the cross-examination included hypothetical questioning derived from the unadmitted letters of Dr. Pollack and Dr. Burkowitz, the wife's testimony clearly and credibly indicated that she suffers from these conditions; therefore, we find no abuse of discretion.

**{¶50}** To the extent that the husband complains about the duration of the award, we note that the Supreme Court of Ohio has held

> that except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony should provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities.

*Kunkle v. Kunkle*, 51 Ohio St.3d 64, 69, 554 N.E.2d 83 (1990).

**{¶51}** In *Gupta v. Gupta*, 8th Dist. Cuyahoga No. 99005, 2013-Ohio-2203, ¶ 72, this court upheld an indefinite award of spousal support for life, remarriage or cohabitation, or the death of the wife. The court noted that in 2008, the husband earned $1,218,854, and the wife's earning ability and work history stood in stark contrast to the husband's. She worked part-time for the first five years of the marriage as a sales associate and also as an instructor, but had not worked outside the home since 1988 and lost her earning capacity.

{¶52} In *Patti v. Patti*, 11th Dist. Portage No. 2013-P-0048, 2014-Ohio-1156, ¶ 8, an indefinite award was also upheld where the wife had not been employed outside the home since approximately 2010 and was receiving Social Security and/or Social Security benefits in the annual amount of approximately $9,720.00, and the husband earned approximately $60,000 per year.

{¶53} In *Wojanowski v. Wojanowski*, 8th Dist. Cuyahoga No. 99751, 2014-Ohio-697, ¶ 48, this court upheld an indefinite award where the parties were married for 23 years, the wife lacked potential to become self-supporting in light of her age, her physical and mental health ailments, the years she spent as a homemaker, and her very limited employment history during the marriage, and husband earned approximately $120,000 per year.

{¶54} Similarly, in *Wormsley v. Wormsley*, 3d Dist. Marion No. 9-14-04, 2014-Ohio-3086, ¶ 22, an indefinite award was upheld where the parties were married for thirty-eight years, the wife was 58, worked only at occasional part-time jobs during the marriage and earned approximately $16,000 per year, and the husband worked full-time with overtime, and earned approximately $60,000 per year.

{¶55} Applying all of the foregoing, we find no abuse of discretion in connection with the duration of the spousal support award. The parties were married for 27 years. The wife had full time employment for the first few years of the marriage but only earned $20,000 per year. From approximately 1989 to 2010, she had several periods of unemployment, and when she was employed, she worked less than 20 hours per week at

$12 to $18 per hour. She worked full time from 2011 to 2012, but this work was done from her home in light of her health issues, and she has been unemployed since October 2012. She stated that she wants to work and has applied for over 70 jobs, but she has been unsuccessful in finding employment. In addition, the record clearly establishes that the wife suffers from a variety of issues that have decreased her mobility and have impeded her. She will need additional course work to be re-licensed to work as a social worker, but her mental and physical health have "impacted her ability to work outside the home." We therefore find no abuse of discretion. The third, fifth, sixth, and seventh assignments of error are without merit.

### Issue of Voluntary Underemployment

{¶56} In his fourth assignment of error, appellant argues that the trial court erred insofar as it failed to find that the wife is voluntarily underemployed and her efforts to find work were simply a minimal attempt to satisfy the requirements of her unemployment compensation. He argues that because she has a master's degree in social work, husband's expert opined that if she were to renew her license, she would be capable of earning $40,000-$50,000 per year. He further argues that she prepared her resume in a manner designed to preclude her from finding work, and that she refuses to look for work outside of Cuyahoga County. He further complains that the trial court erred in concluding that the wife suffers from "disabling limitations" that legitimately impact her ability to work.

**{¶57}** The issue of whether a party is voluntarily unemployed or underemployed is a factual determination to be made by the trial court based on the circumstances of each particular case. *Rock v. Cabral*, 67 Ohio St.3d 108, 112, 616 N.E.2d 218 (1993). A trial court does not err in rejecting a claim that a spouse is voluntarily underemployed where the spouse is employed to the same extent that she was during the marriage and does not have any exceptional skills with which to improve the employment potential. *Lawler v. Lawler*, 11th Dist. Geauga No. 95-G-1950, Ohio App. LEXIS 5242 (Nov. 24, 1997). If the decision of the trial court is supported by some competent, credible evidence going to all the essential elements of the case, we will not disturb it. *Neumann v. Neumann*, 8th Dist. Cuyahoga No. 96915, 2012-Ohio-591, ¶ 16, citing *Masitto v. Masitto*, 22 Ohio St.3d 63, 66, 488 N.E.2d 857 (1986).

**{¶58}** In this matter, the wife was 59 years old at the time of trial. She worked full-time from 2011 to 2012, but she has worked primarily at part-time jobs that paid an hourly wage for the vast majority of the marriage. She also had extended periods of unemployment. She testified that she would like to work and has applied for over 70 jobs. She has gone to various websites and called friends and professors to find employment, but has not been successful. In addition, because of her Crohn's disease, anxiety and depression, and her balance issues, she prefers to work from home. On this record, the trial court concluded that the wife was not voluntarily underemployed. There is competent, credible evidence to support this conclusion.

**{¶59}** The fourth assignment of error is without merit.

**{¶60}** Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
KENNETH A. ROCCO, J., CONCUR