[Cite as *Cuyahoga Hts. v. Ram Supply Chain, L.L.C.*, 2021-Ohio-315.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

VILLAGE OF CUYAHOGA HEIGHTS,   :

    Plaintiff-Appellee,   :

                                       No. 109565 and 109566

    v.   :

RAM SUPPLY CHAIN, L.L.C., ET AL.,   :

    Defendants-Appellants.   :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 4, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Probate Court Division
Case Nos. 2018ADV234017 and 2018 ADV234021

---

### *Appearances:*

Walter│Haverfield, L.L.P., R. Todd Hunt, Benjamin G. Chojnacki, Assistant Director of Law, Village of Cuyahoga Heights, and Wesley M. Kretsch, *for appellee.*

Richard D. Eisenberg, *for appellant.*

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant, Ram Supply Chain, L.L.C. ("Ram"), appeals a judgment of the Cuyahoga County Probate Court finding that the appropriation of

its property is necessary and serves a legitimate public purpose. Ram claims the following three errors:

1. The trial court committed reversible error in adopting the magistrate's opinion as an order without independently reviewing the facts to determine necessity, contrary to statute.

2. It was reversible error for the lower court to adopt and incorporate the magistrate's opinion (titled Magistrate's Decision) with plain error on its face.

3. The lower court committed reversible error by denying appellants an extension of time to prepare a transcript and file objections to the magistrate's decision when appellants' counsel was not provided a copy of the decision until after the fourteen (14) day objection period had elapsed.

{¶ 2} We find no merit to the appeal and affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} The village of Cuyahoga Heights ("the Village") sought to acquire fee simple interests in the rear portion of two adjacent parcels of real property for a public improvement project. The two properties were owned by Ram and JJM Investments, L.L.C. ("JJM Investments"). The Village offered to purchase the properties, but negotiations were not successful. As a result, the Village commenced two separate appropriations proceedings in the Cuyahoga County Probate Court to take the properties for the Nicky Boulevard Project. The Nicky Boulevard Project involves the extension of storm sewers, the installation of a retention pond, the stabilization eroding slopes, and the creation of a stream along a portion of the closed Nicky Boulevard Landfill and a portion of East 49th Street. The Village asserted that the project is necessary to prevent further flooding and erosion in the

Village, manage leachate from the closed landfill, and protect the quality of the groundwater.

{¶ 4} In response to the Village's claims, Ram and JJM Investments (collectively "defendants"), asserted that their properties were not needed for the project. They claimed the retention basin/pond could be built on other land and that, therefore, their properties would not be needed for slope stabilization, grading, or fill. They asserted that, unlike other properties on East 49th Street, their properties are not suffering from erosion. And, defendants argued that because managing leachate from the closed landfill benefits a private corporation, it is not a public improvement project.

{¶ 5} Following a hearing on the necessity of the appropriation of the defendants' properties, a probate court magistrate issued a decision finding that the appropriation of the defendants' properties is necessary and serves a legitimate public purpose. The magistrate's decision was filed on January 9, 2020, approximately one year after the hearing. On January 30, 2020, the probate court adopted the magistrate's decision. The probate court's order stated, in its entirety:

> This cause came on for hearing before Magistrate * * * on the Petition for Appropriation filed by the Plaintiff and the Answer/Motion of Defendant to Dismiss Complaint for Failure to Show Necessity filed by Defendant property owner, JJM Investments, L.L.C.
>
> The Court finds that a Magistrate's Decision was issued, a copy of which was mailed to all interested parties on January 10, 2020 and that no objections have been filed.
>
> The Court further finds that the Magistrate's decision should be adopted as the findings and conclusions of this court.

Therefore, it is ORDERED that the appropriation of the defendant[s'] subject property is necessary and serves a legitimate public purpose.

It is further ORDERED that a pretrial on the issue of compensation is scheduled for February 27, 2020 at 2:30 p.m.

(January 30, 2020, judgment entry.)

{¶ 6} One day later, on January 31, 2020, Ram filed a motion for an extension of time within which to file objections to the magistrate's decision. Ram asserted that there was "good cause" for the extension because Ram did not receive a copy of the magistrate's decision until January 25, 2020. The probate court overruled the motion for extension of time. Ram now appeals the trial court's judgment adopting the magistrate's decision.

## II. Law and Analysis

### A. Magistrate's Authority

{¶ 7} In the first assignment of error, Ram argues the probate court erred in adopting the magistrate's decision without independently reviewing the facts. Ram contends that only a judge, and not a magistrate, may determine the necessity of appropriating private property. Ram further asserts that a magistrate has no legal authority to conduct a hearing on a necessity.

{¶ 8} However, Ram did not object to the hearing before the magistrate and, therefore, waived all but plain error. The doctrine of plain error is not favored in civil cases and must be applied with the utmost caution. *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997). We, therefore, only apply plain error

"in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Id.* at syllabus.

{¶ 9} Ram argues the trial court erred in adopting the magistrate's decision because the magistrate lacked legal authority to conduct a hearing on the necessity for appropriating its property. Indeed, R.C. 163.09, which governs the appropriation of private property, provides that "only the judge may determine the necessity of the appropriation." R.C. 163.09(B)(2).

{¶ 10} However, Civ.R. 53 vests magistrates with broad authority to do any of the following:

(a) Determine *any* motion in *any* case;

(b) Conduct a trial of *any* case that will not be tried to a jury;

* * *

(e) Exercise any other authority specifically vested in magistrates by statute and consistent with this rule.

Civ.R. 53(C)(1). In addition, Civ.R. 53(D)(1)(a) allows a trial judge to "refer a particular case or matter or a category of cases or matters to a magistrate by a specific or general order of reference or by rule."

{¶ 11} In any case, a magistrate's decision is an interlocutory recommendation and is not the final order of the court. *Becher v. Becher*, 8th Dist. Cuyahoga No. 108472, 2020-Ohio-669, ¶ 32; *see also State v. Pennington*, 187 Ohio

App.3d 526, 2010-Ohio-2139, 932 N.E.2d 941, ¶ 16 (2d Dist.). "Civ.R. 53 places upon the court the ultimate authority and responsibility over the referee's findings and rulings." *Hartt v. Munobe*, 67 Ohio St.3d 3, 615 N.E.2d 617 (1993). Therefore, the trial court in this case was authorized to refer the appropriation hearing to a magistrate, who was authorized to make factual findings and recommendations to the judge.

{¶ 12} Ram nevertheless argues there is nothing in the record to indicate that the trial court independently reviewed the magistrate's factual findings. To be sure, a trial court judge may not merely "rubber stamp" a magistrate's decision since the magistrate acts as an agent of the court without independent authority. *Becher* at ¶ 24, citing *State ex rel. Dewine v. Ashworth*, 4th Dist. Lawrence No. 11CA16, 2012-Ohio-5632, ¶ 38; *McCarty v. Hayner*, 4th Dist. Jackson No. 08CA8, 2009-Ohio-4540, ¶ 17.

{¶ 13} However, unlike the trial judge in *Becher*, who signed the final judgment simultaneously with the magistrate and deprived the parties of the opportunity to file objections, the court in this case afforded the parties time to file objections and made a separate finding at a later date that "the appropriation of the Defendant's subject property is necessary and serves a legitimate purpose." (Jan. 30, 2020, judgment entry.) Although the trial court did not state reasons for its conclusion that the appropriation of Ram's property was necessary and served a legitimate purpose, an appellate court presumes the trial court conducted an independent review of the magistrate's decision unless the appellant affirmatively

shows that the trial court failed to conduct an independent analysis. *Millers v. Kasnett*, 2015-Ohio-298, 26 N.E.3d 915, ¶ 20 (8th Dist.), citing *Brzozowski v. Brzozowski*, 8th Dist. Cuyahoga No. 101013, 2014-Ohio-4820, ¶ 7, citing *Rokakis v. W. Res. Leasing Co.*, 8th Dist. Cuyahoga No. 95058, 2011-Ohio-1926, ¶ 18.

{¶ 14} The fact that the trial court adopted the magistrate's decision does not, by itself, prove that the court did not exercise its independent judgment. *Id.* "'[T]he trial court is not required to "comment or reference" any portion of the record in undertaking its independent review of the record.'" *Millers* at ¶ 21, quoting *Ernsberger v. Ernsberger*, 8th Dist. Cuyahoga No. 100675, 2014-Ohio-4470, ¶ 21. Although it may be best practice for the trial court to explain its reason for adopting the magistrate's decision, such a practice is not required. *Millers* at ¶ 21.

{¶ 15} The trial judge made the ultimate determination that the appropriation of Ram's property was necessary and served a legitimate purpose. And because the court, as opposed to the magistrate, made the determination of necessity, the trial court complied with R.C. 163.09(B)(2). We, therefore, find no error in the court's decision to have a magistrate conduct the appropriations hearing since the trial court made the final determination on necessity.

{¶ 16} The first assignment of error is overruled.

## B. Plain Error

{¶ 17} In the second assignment of error, Ram argues the magistrate's decision had "plain error on its face" because none of the resolutions passed by the Village council complied with R.C. 163.59(B).

{¶ 18} R.C. 163.59(B) states, in relevant part:

> In order for an acquiring agency to acquire real property, the acquisition shall be for a defined public purpose that is to be achieved in a defined and reasonable period of time.

{¶ 19} Despite Ram's statements to the contrary, the Village passed resolutions and ordinances declaring the necessity of appropriating Ram's property for a public purpose to be achieved within a defined and reasonable time. Resolution No. 2017-16 states, in relevant part, that the appropriation of private property within the Village "is necessary and advisable for the public health, safety and welfare." The resolution expressly states that the property would be acquired "for public use * * * to extend the sewer system, install a retention pond, stabilize eroding slopes, and create a stream along the western portion of the Nicky Boulevard Landfill * * * ." The resolution further provides:

> This Resolution is hereby declared to be an emergency measure immediately necessary for the preservation of the public peace, health, safety and welfare of the Village, and for further reason that it is immediately necessary for the transactions that are the subject of this Resolution to occur as soon as possible to meet deadlines imposed by the Ohio Environmental Protection Agency and in order to ensure that flooding, erosion, and other problems which the Project aims to address will no longer affect real property in the Village.

Resolution 2017-16 expressly states that the Nicky Boulevard Project is intended for a public purpose and that the goals of the project would be obtained by deadlines imposed by the Ohio Environmental Protection Agency.

{¶ 20} Ordinance 2018-46 similarly states that it is "an emergency measure" passed pursuant to the Village's Home Rule Authority "for the immediate

preservation of the public peace, health, and safety of the Village." The ordinance further states, in relevant part, that

> this ordinance must be immediately effective to ensure that the Law Director and Assistant Law Director may timely petition the Cuyahoga County Probate Court to acquire ownership of the Property in a timeframe that allows the Nicky Boulevard Storm Sewer Extension and Slope Stabilization Project to be started and completed in compliance with the timeframe for project completion required by the United States Army Corps of Engineers, the Ohio Environmental Protection Agency, and all other interested governmental agencies.

The ordinance declared that the appropriation of Ram's property served a legitimate government purpose. And, the ordinance states that the project will be completed within the timeframe required by the Ohio Environmental Protection Agency and the United States Army Corps of Engineers. Resolution No. 2017-16 and Ordinance 2018-16 comply with R.C. 163.59(B) because they expressly state that the appropriation of Ram's property is necessary to serve a legitimate public purpose and that the public improvement project will be completed within a definite and reasonable time as determined by the Ohio Environmental Protection Agency and the United States Army Corps of Engineers.

{¶ 21} Under R.C. 163.09(B)(1)(a), municipal resolutions and ordinances declaring the necessity for appropriation create a rebuttable presumption of the necessity of appropriating private property. R.C. 163.09(B)(1)(a) states, in its entirety:

> A resolution or ordinance of the governing or controlling body, council, or board of the agency declaring the necessity for the appropriation creates a rebuttable presumption of the necessity for the appropriation

if the agency is not appropriating the property because it is a blighted parcel or part of a blighted area or slum.

Since Ram's property is neither blighted nor in a blighted area or slum, the magistrate properly concluded that the Village's resolutions created a rebuttable presumption that the appropriation of Ram's property was necessary for the project.

{¶ 22} Ram failed to present evidence rebutting that presumption. Ram's expert witness, Joseph Ciuni ("Ciuni"), a civil engineer and professional surveyor, testified that the storm sewer extension was occurring on other properties within the project area and that Ram's property was being acquired to place fill in the large ravine behind its property. Ciuni further stated that the retention basin/pond could be placed anywhere in the project area, including on top of the closed landfill. Ciuni opined that placing the pond elsewhere would eliminate the need to use Ram's property.

{¶ 23} However, on cross-examination, Ciuni was unable to identify whether any problems would result from moving the pond elsewhere. And, he admitted that he had not examined the entire plan for the project to evaluate whether the pond could be placed elsewhere.

{¶ 24} The grading plan for the slope stabilization and retention pond required approval of CSX Railroad because the project calls for fill to be placed on portions of its property for slope stabilization. Ciuni admitted that he did not know if CSX had approved the project and conceded that if CSX approved the project, then the taking of Ram's property would be necessary.

{¶ 25} By contrast, the Village's expert engineer, Todd Sciano ("Sciano"), testified that Ram's property is necessary for the project because the retention basin must be at the lowest elevation of the project site since water naturally flows to the lowest point. To place a retention pond on top of the landfill, which has a higher elevation, would require pumps to force the water uphill. Such a plan would be cost prohibitive.

{¶ 26} Ciuni testified that he did not observe any slope erosion on Ram's property. However, he admitted that he did not take any soil samples and was unaware of the type of soil on Ram's property. Sciano, on the other hand, testified that the storm sewer was failing in the project area and that the failure was causing an immense need for stabilization. Sciano opined that Ram's property would likely experience the same erosion issues that were occurring on many nearby properties on East 49th Street. Sciano explained that Ram's property would benefit from the stabilization aspect of the project.

{¶ 27} Ram's expert, Ciuni, could not comment on the leachate contamination coming from the nearby landfill. But he admitted that leachate must be properly managed. He also admitted that there may be "much public benefit" from the project. Kurt Princic, the District Chief of the Ohio EPA North District, testified that leachate management issues will be resolved by the project because the leachate will be able to drain properly. Princic stated that access to private properties is necessary for the successful implementation of the project.

{¶ 28} In short, the Village passed resolutions and ordinances declaring the necessity of appropriating the rear portion of Ram's property. The resolutions and ordinances created a rebuttable presumption of the necessity for the taking of Ram's property. Ram argued that there is no erosion on its property and that the retention pond could be located elsewhere. However, Ram's expert failed to review the entire project, acknowledged that he did not take soil samples from Ram's property, could not comment on the leachate problem and, therefore, could not render a reliable opinion regarding the impact on the project if the Village was unable to use the rear portion of Ram's property. Therefore, Ram failed to successfully rebut the presumption that the taking of the rear portion of its property is necessary and will serve a legitimate public purpose.

{¶ 29} The second assignment of error is overruled.

## C. Extension of Time

{¶ 30} In the third assignment of error, Ram argues the trial court abused its discretion in denying its motion for extension of time to file objections to the magistrate's decision when its counsel was not served with a copy of the magistrate's decision until after the 14-day objection period had elapsed.

{¶ 31} The decision as to whether to grant a motion for extension of time lies within the broad discretion of the trial court and will not be disturbed absent an abuse of discretion. *Johnson v. Univ. Hosp. Case Med. Ctr.*, 8th Dist. Cuyahoga No. 90960, 2009-Ohio-2119, ¶ 5. An abuse of discretion implies a decision that is

unreasonable, arbitrary, or unconscionable. *State ex rel. DiFranco v. S. Euclid*, 144 Ohio St.3d 571, 2015-Ohio-4915, 45 N.E.3d 987, ¶ 13.

{¶ 32} Civ.R. 53(D)(3) governs magistrate's decisions and states, in relevant part, that "[a] magistrate's decision shall be in writing, identified as a magistrate's decision in the caption, signed by the magistrate, filed with the clerk, and served by the clerk on the parties or their attorneys no later than three days after the decision is filed." Civ.R. (D)(3)(a)(iii). A party may then file written objections to a magistrate's decision "within fourteen days of the filing of the decision * * * ." Civ.R. 53(D)(3)(b)(i). However, Civ.R. 53(D)(5) allows the trial court to grant a reasonable extension of time outside the 14-day period for "good cause shown." *Id.* "'Good cause' includes, but is not limited to, a failure by the clerk to timely serve the party seeking an extension with the magistrate's order or decision." *Id.*

{¶ 33} The magistrate's decision was filed on January 9, 2020. Below the magistrate's signature, the decision indicates that copies were mailed to the addresses of lead counsel for all parties. The trial court's judgment entry adopting the magistrate's decision also indicates that the magistrate's decision was mailed by the clerk of courts on January 10, 2020. Pursuant to Civ.R. 5(B)(2)(c), service is complete upon mailing.

{¶ 34} The Ohio Supreme Court has held that a presumption of regularity attaches to official actions. *L.J. Smith, Inc. v. Harrison Cty. Bd. of Revision*, 140 Ohio St.3d 114, 2014-Ohio-2872, 16 N.E.3d 573, ¶ 27. The "presumption of regularity" presupposes that public officials have properly performed their duties.

Applying the presumption of regularity, we can infer that the clerk mailed the magistrate's decision on January 10, 2020, as indicated by the court's docket. And, there is no evidence to rebut that presumption because there is no evidence that the clerk failed to serve Ram or its lawyer with a copy of the magistrate's decision.

{¶ 35} Nevertheless, Ram failed to file timely objections to the magistrate's decision within the 14-day period set forth in Civ.R. 53(D)(3)(b)(i). Instead, Ram filed a motion for extension of time to file objections on January 31, 2020, the day after the trial court entered final judgment adopting the magistrate's decision. Once the trial court adopted the magistrate's decision and entered final judgment, it lost jurisdiction to grant the requested extension of time. *Sanctuary Condo. Assn. v. Castro*, 8th Dist. Cuyahoga No. 106008, 2018-Ohio-3561, ¶ 13; *Napier v. Cieslak*, 12th Dist. Butler No. CA2014-12-242, 2015-Ohio-2574, ¶ 7 ("[A] court does not have jurisdiction to permit objections to the magistrate's decision when the magistrate's decision was adopted and already made a final judgment by the trial court."). Therefore, the trial court lacked authority to grant Ram's motion for extension of time, and Ram's remedy, at that point in time, was to file a motion for relief from judgment pursuant to Civ.R. 60(B). But Ram never filed a motion for relief from judgment.

{¶ 36} Moreover, Ram's motion for extension of time to file objections failed to demonstrate "good cause." Ram's lawyer represented to the court that he received a copy of the magistrate's decision on January 25, 2020. Yet, he did not file a request for additional time until January 31, 2020. Ram failed to explain why counsel

waited six days after receiving the magistrate's decision to file the motion for extension of time. The trial court had not yet adopted the magistrate's decision on January 25, 2020, and the trial court would likely have granted a reasonable request for extension of time if the request were made before the court entered final judgment. However, by January 31, 2020, it was too late.

{¶ 37} The record indicates that Ram was served with the magistrate's decision, and Ram failed to demonstrate good cause for failing to file timely objections to the magistrate's decision. Therefore, the third assignment of error is overruled.

{¶ 38} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court, probate division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

EILEEN T. GALLAGHER, PRESIDING JUDGE

LARRY A. JONES, SR., J., CONCURS;
MARY EILEEN KILBANE, J., DISSENTS WITH SEPARATE ATTACHED OPINION

MARY EILEEN KILBANE, J., DISSENTING WITH SEPARATE OPINION

{¶ 39} I respectfully dissent. One year and two days after the hearing on necessity, the magistrate's decision was filed. The copy was delivered to appellant's counsel after the 14-day objection period had expired. The court inadvertently used the wrong address. This incorrect address was in no way the appellant's fault or responsibility. I would find that the appellant did in fact meet his good cause shown burden. I respectfully would reverse and remand the matter.